**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2367

SVETLANA KUUSK,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 17, 2013      Decided: October 16, 2013

Before MOTZ and DIAZ, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition for review denied by published opinion. Judge Motz wrote the opinion, in which Judge Diaz and Judge Gibney joined.

**ARGUED**: Jonathan Scott Greene, GREENE LAW FIRM, LLC, Columbia, Maryland, for Petitioner. Nicole N. Murley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Stuart F. Delery, Acting Assistant Attorney General, William C. Peachey, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

DIANA GRIBBON MOTZ, Circuit Judge:

Svetlana Kuusk, an Estonian-born citizen of Russia, petitions this court for review of an order by the Board of Immigration Appeals ("BIA") denying her untimely motion to reopen removal proceedings. Kuusk argues that the BIA erroneously concluded that her circumstances did not warrant equitable tolling of the statutory filing deadline. We deny Kuusk's petition for review.

I.

On June 1, 2003, Kuusk entered the United States on a four-month J-1 visa. She overstayed her visa. On October 12, 2005, she was served with a notice to appear before an immigration judge ("IJ"). Kuusk conceded her removability before the IJ, but applied for asylum and withholding of removal pursuant to 8 U.S.C. § 1158 and § 1231(b)(3)(2006), respectively. The IJ denied both applications.

Kuusk timely appealed the IJ's decision to the BIA. During the pendency of her appeal, Kuusk married a citizen of the United States. On October 18, 2011, Kuusk attended an "InfoPass" appointment with a U.S. Customs and Immigration Services (USCIS) officer. Kuusk contends that this officer informed her that she "could file for a marriage-based green card directly with the USCIS based on [her] marriage to a U.S.

2

citizen . . . even though [her] case was currently on an asylum appeal from the immigration court," and that "if anything was wrong with the filing, it would be rejected or [she] would be notified." AR 24. She further contends that she understood these words to mean that she did not additionally need to pursue her case before the BIA regarding her removal proceedings.

A week after receiving the USCIS officer's advice, on October 25, Kuusk informed her immigration attorney via e-mail of her plan "to file papers now through marriage." AR 36. Her attorney responded the same day, warning her:

> Remember that for immigrants in proceedings—getting a marriage green card is complicated. . . . Also, please know that you need to file a motion to reopen your case before the BIA within 90 days of . . . its final decision. This deadline is firm, and if you do not meet it, nothing can be done. Don't mess around, [and] be sure you do everything right.

Id. On November 30, 2011, the BIA adopted and affirmed the IJ's denial of Kuusk's application for asylum, and entered a final order of removal. Eleven days later, on December 11, Kuusk's attorney notified her of the denial via e-mail and warned her that she "now ha[d] about 70 days to file a motion to reopen the case based upon marriage to a US citizen," and that if she "wait[ed] beyond that period, [her] removal order w[ould] become fixed and [she would] not be able to remain in the [United States] legally." AR 37.

3

Kuusk did not file a motion to reopen her case within ninety days of the BIA's final order (i.e., by February 28). On March 22, 2012, the USCIS denied Kuusk's I-485 application for a green card because she was subject to a deportation order.

Six weeks later, Kuusk filed an untimely motion to reopen her removal proceedings to seek adjustment of her immigration status. Kuusk asked the BIA to apply equitable tolling principles and disregard her untimeliness because of her reliance on the USCIS officer's assertedly incorrect advice, or to exercise its authority to reopen her case sua sponte.

The BIA denied Kuusk's motion. Applying the equitable tolling standard that we have applied in other contexts, the BIA concluded that Kuusk had failed to show that: (1) wrongful conduct by the opposing party prevented her from timely asserting her claim; or (2) extraordinary circumstances beyond her control made it impossible for her to comply with the statutory time limit. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). Kuusk noted a timely appeal.[*]

We review the BIA's legal conclusions de novo, giving appropriate deference to its interpretation of the Immigration and Nationality Act (INA) in accordance with principles of

_____

[*] The BIA also declined to exercise its discretionary authority to reopen Kuusk's case sua sponte. Kuusk does not appeal this portion of the BIA's order.

4

administrative law.  Hui Zheng v. Holder, 562 F.3d 647, 651 (4th Cir. 2009).  "We review denials of motions to reopen claims for asylum and claims for withholding of [removal] under an abuse of discretion standard."  Id.


## II.

The statutory filing deadline at issue here provides that a motion to reopen removal proceedings "shall be filed within 90 days of the date of entry of a final administrative order of removal."  8 U.S.C. § 1229a(c)(7)(C)(i) (2006).  Every circuit to have addressed the issue has held that this provision constitutes a statute of limitations to which the principles of equitable tolling apply.  See Avila-Santoyo v. U.S. Att'y Gen., 713 F.3d 1357, 1363-64 (11th Cir. 2013)(per curiam); Hernandez-Moran v. Gonzales, 408 F.3d 496, 499-500 (8th Cir. 2005); Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005); Harchenko v. INS, 379 F.3d 405, 410 (6th Cir. 2004); Riley v. INS, 310 F.3d 1253, 1258 (10th Cir. 2002); Socop-Gonzalez v. INS, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc); Iavorski v. U.S. INS, 232 F.3d 124, 130 (2d Cir. 2000).  Although this court has not previously addressed the issue, we agree with our sister circuits and now hold that § 1229a(c)(7)(C)(i) sets forth a limitations period that can be equitably tolled.

The Government and Kuusk also agree that the statute contains a limitations period that can be equitably tolled; they disagree, however, as to what standard must be met to establish a basis for equitable tolling. Kuusk argues that the BIA erred in applying the standard we set forth in Harris, 209 F.3d at 330. The Government contends that the BIA acted within its discretion in applying the Harris standard.

In Harris, we addressed equitable tolling in the context of a petition for a writ of habeas corpus. We held equitable tolling to be proper only when (1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant"; or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Id. (internal quotation mark omitted). We recognized that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Id. To apply the doctrine generously "would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." Id.

We concluded in Harris that this rigorous standard was necessary to ensure that "any resort to equity . . . be reserved

6

for those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. Subsequently, we have applied the Harris standard in other contexts. See Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 227 (4th Cir. 2005)(ERISA); Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (FLSA).

Kuusk argues, however, that the BIA should not have applied the Harris standard in the context of motions to reopen removal proceedings, but instead should have adopted a more lenient equitable tolling standard. She relies on the equitable tolling standards articulated by other circuits in cases involving untimely motions to reopen removal proceedings.

To be sure, the precise wording used to address the appropriateness of equitable tolling in these cases differs from that in Harris. See, e.g., Socop-Gonzalez, 272 F.3d at 1193 (applying equitable tolling when, "despite all due diligence, [the party invoking equitable tolling] is unable to obtain vital information bearing on the existence of the claim . . . [due to] circumstances beyond the party's control" (first alteration in original)); Hernandez-Moran, 408 F.3d at 499-500 ("Equitable tolling is granted sparingly. Extraordinary circumstances far beyond the litigant's control must have prevented timely filing." (alteration omitted)); Borges, 402 F.3d at 406-07

7

(explaining that petitioner must show both that he exercised due diligence and that extraordinary circumstances, like fraud, prevented him from timely asserting his claim).

But in none of the cases on which Kuusk relies, or in any other, has a sister circuit fashioned a special, more lenient equitable tolling standard for immigration proceedings. Rather, each of our sister circuits applies, in immigration cases, its general standard for equitable tolling. Most importantly, although differently worded, each of those standards, like that in Harris, adheres to the general principle that equitable tolling will be granted "only sparingly," not in "a garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

Kuusk has provided us with no rationale to support her argument that we should fashion a special standard to apply in immigration cases, and we see no reason to do so. Thus, we hold that the Harris standard applies to untimely motions to reopen removal proceedings. The BIA did not err in applying that standard in this case.

## III.

Alternatively, Kuusk maintains that the BIA incorrectly applied the Harris standard to the facts of this case. This argument also fails.

8

Kuusk contends that the assertedly erroneous instructions she received from the USCIS officer prevented her from filing a timely motion to reopen her immigration case. She relies on Socop-Gonzalez, in which the Ninth Circuit held equitable tolling to be warranted when an INS officer gave erroneous advice to a petitioner seeking a marriage-based adjustment of status. 272 F.3d at 1193-96. In that case, after the petitioner married a United States citizen during the pendency of his asylum appeal, he asked an INS officer for advice on obtaining a marriage-based adjustment of status. Id. at 1181. The officer instructed him to "withdraw his asylum appeal and to file an application for adjustment of status with the INS." Id. When the petitioner followed the officer's advice, the withdrawal of his asylum appeal immediately finalized his deportation order. Id.

The Ninth Circuit pointed out that the advice of the INS officer was incorrect: "Instead of instructing Socop to withdraw his asylum petition, the INS officer should have told Socop to file a[] [green card] petition with the INS and wait until it was approved." Id. Because Socop followed the officer's incorrect instructions, he "unwittingly triggered his own immediate deportation." Id. at 1182. For this reason, the court concluded that, due to the INS officer's erroneous and prejudicial advice, Socop was prevented "by circumstances beyond

9

his control and going beyond 'excusable neglect[]' from discovering . . . vital information he needed in order to determine that a motion to reopen was required in order to preserve his status."  Id. at 1194.

Socop-Gonzalez fundamentally differs from the case at hand. Here, the USCIS officer did not provide "incorrect instructions."  Rather, according to Kuusk's own testimony, the officer informed her that she should apply for a marriage-based green card "directly with the USCIS based on [her] marriage to a U.S. citizen . . . even though [her] case was currently on an asylum appeal from the immigration court."  AR 24.  This was correct:  Kuusk did in fact need to apply "directly with the USCIS" for a marriage-based green card.  This correct instruction, however, did not excuse Kuusk from also pursuing the other necessary course:  a motion to reopen her proceedings before the BIA.  Unlike the INS officer in Socop-Gonzalez, the USCIS officer here did not instruct Kuusk to abandon her application for asylum or to forego filing a motion to reopen her case before the immigration court.  Moreover, in response to Kuusk's statement that she intended to file for a marriage-based green card directly with the USCIS based on her marriage to a United States citizen, Kuusk's immigration attorney warned her that she needed to "file a motion to reopen [her] case before the BIA[.]"  Both before and after the BIA denied her appeal,

10

Kuusk's attorney cautioned her as to the necessity and immediacy of filing this motion.

Kuusk simply misunderstood the accurate, but limited, advice given by a USCIS officer and then ignored two warnings from her attorney that she needed to file a motion to reopen her immigration case within the statutory time limit. Such misunderstandings, however innocent, do not constitute "extraordinary circumstances" beyond the petitioner's control sufficient to warrant equitable tolling. Harris, 209 F.3d at 330; see also Gayle, 401 F.3d at 227 ("The law has always, and necessarily, held people responsible for innocent mistakes."). We therefore hold that the BIA did not abuse its discretion in determining that equitable tolling was not warranted here.

This result is unfortunate because it appears that a timely motion to reopen Kuusk's case would in all likelihood have led to an adjustment of her immigration status, thereby enabling her to remain legally in this country with her husband. At oral argument, we asked the Government to identify any steps an individual in Kuusk's position might take to obtain relief from the Government in order to avoid prolonged separation from her family. The Government indicated that Kuusk, through counsel, could (1) ask the Department of Homeland Security to join her in a motion to reopen her case; (2) ask the Government for a favorable exercise of prosecutorial discretion, which, if

11

granted, would administratively close her case; or (3) ask the Government to grant equitable relief in the form of deferred action, in which case Kuusk would ask the Department not to pursue removal. Oral Argument at 33:30–35:00, Kuusk v. Holder, 12-2367, September 17, 2013. Thus, although we cannot afford Kuusk equitable relief, the "broad discretion exercised by immigration officials," which remains "[a] principal feature of the removal system," Arizona v. United States, 132 S. Ct. 2492, 2499 (2012), might still be marshaled to provide Kuusk relief.

IV.

In sum, we hold that when a petitioner fails to meet the statutory deadline to file a motion to reopen her immigration case, equitable tolling is appropriate only when (1) the Government's wrongful conduct prevented the petitioner from filing a timely motion; or (2) extraordinary circumstances beyond the petitioner's control made it impossible to file within the statutory deadline. Because Kuusk failed to satisfy either of these criteria, her petition for review is

DENIED.

12