# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60865

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2016

Lyle W. Cayce
Clerk

SERGIO LUGO-RESENDEZ,

> Petitioner

v.

LORETTA LYNCH, U.S. ATTORNEY GENERAL,

> Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Petitioner Sergio Lugo-Resendez filed a motion to reopen his removal proceedings in the Immigration Court. The Immigration Judge denied his motion as untimely, and the Board of Immigration Appeals affirmed. We GRANT Lugo-Resendez's petition for review, and REMAND for further proceedings.

## I.

Petitioner Sergio Lugo-Resendez, a citizen of Mexico, was admitted to the United States as a lawful permanent resident in August 1973. In December 2002, he pleaded guilty in Texas state court to one felony count of "possession of controlled substance less than one gram." He received a

No. 14-60865

sentence of two years in prison, which was suspended, and five years of community supervision. In February 2003, the Government initiated removal proceedings against Lugo-Resendez. The Notice to Appear alleged that he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his state conviction qualified as an "aggravated felony." Lugo-Resendez did not challenge this allegation, and an order of removal was entered in March 2003.

In July 2014, Lugo-Resendez filed a motion to reopen his removal proceedings in the Immigration Court under 8 U.S.C. § 1229a(c)(7). This statute "guarantees to each alien the right to file 'one motion to reopen proceedings.'"[1] The Supreme Court has explained that "[a] motion to reopen is a form of procedural relief that 'asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing.'"[2] In his motion, Lugo-Resendez asserted that there had been "a change in circumstances since [his] hearing." In 2006, the Supreme Court held in *Lopez v. Gonzales* that simple possession does not qualify as an "aggravated felony" under the Immigration and Nationality Act ("INA").[3] Lugo-Resendez urged that *Lopez* invalidated the basis for his removal because it resolved that his Texas conviction for "possession of controlled substance less than one gram" did not qualify as an "aggravated felony."

The Government responded that Lugo-Resendez's motion to reopen was untimely. A motion to reopen under 8 U.S.C. § 1229a(c)(7) must "be filed within 90 days of the date of entry of a final administrative order of removal."[4] The Government argued that Lugo-Resendez's motion to reopen—filed more

---

[1] *Dada v. Mukasey*, 554 U.S. 1, 15 (2008) (quoting 8 U.S.C. § 1229a(c)(7)(A)); *see also Kucana v. Holder*, 558 U.S. 233, 240 n.5 (2010).

[2] *Dada*, 554 U.S. at 12 (quoting 1 Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, Immigration Law and Procedure § 3.05[8][c] (rev. ed. 2007)).

[3] 549 U.S. 47 (2006).

[4] 8 U.S.C. § 1229a(c)(7)(C)(i).

2

No. 14-60865

than eleven years after the entry of the March 2003 order of removal—clearly did not comply with this statutory deadline. Lugo-Resendez anticipated this argument and conceded in his motion to reopen that the 90-day deadline had passed—but he insisted that he was entitled to equitable tolling because of another change in the law. Under 8 C.F.R. § 1003.23(b)(1), "[a] motion to reopen or to reconsider shall not be made [in the Immigration Court] by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States." The Board of Immigration Appeals ("BIA") has long held that this regulation divests the Immigration Court of jurisdiction to "entertain motions filed by aliens who ha[ve] departed the United States."[5] But in 2012, we held in *Garcia-Carias v. Holder* that an alien has the right to file a motion to reopen under § 1229a(c)(7) even if he has departed the United States.[6] Lugo-Resendez maintained that—because he departed the United States in 2003—he was unable to file a motion to reopen until this Court's decision in *Garcia-Carias*.

In an affidavit, Lugo-Resendez further explained that he did not become aware of *Garcia-Carias* until May 2014, when he "heard about a man that was a lawful permanent residen[t] who had a drug conviction, but . . . was allowed to apply for cancellation of removal because a new law made it possible even though he had already been deported." Lugo-Resendez asked his daughter to visit an immigration attorney on his behalf and inquire about this new law; she did so, and informed him that it was possible to reopen his case. Once Lugo-Resendez received this news, he "immediately gathered the money and asked the immigration attorney . . . to file [his] request to reopen."

The Immigration Judge ("IJ") denied Lugo-Resendez's motion to reopen.

---

[5] *See Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646, 648-49 (B.I.A. 2008) (collecting cases).

[6] 697 F.3d 257 (5th Cir. 2012).

3

No. 14-60865

Reviewing this Court's case law, the IJ concluded that *Garcia-Carias* only applies "where the motion to reopen falls within the statutory specifications." That is, "*Garcia-Carias* does not reach motions to reopen that are untimely filed or otherwise disqualified under the statutory scheme." Adopting the Government's position, the IJ determined that Lugo-Resendez's motion to reopen was "untimely" because it was filed more than 90 days after the March 2003 order of removal. As a result, the IJ concluded that the Immigration Court lacked jurisdiction to consider it because § 1003.23(b)(1) applied. Lugo-Resendez appealed to the BIA. In his brief, he argued that the IJ misread *Garcia-Carias*. He also urged that the IJ ignored his equitable tolling argument. The BIA affirmed the IJ "without opinion" in a single-member, summary decision. Lugo-Resendez timely filed a petition for review.

II.

"We have authority to review only an order of the BIA, but our task is effectively to review the IJ's decision when the BIA has explicitly adopted it."[7]

"This Court reviews the denial of a motion to reopen 'under a highly deferential abuse-of-discretion standard.' The Board abuses its discretion when it issues a decision that is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies."[8]

III.

A.

We start with some background on motions to reopen. An alien seeking to reopen his removal proceedings has two options: (1) he can invoke the court's

---

[7] *Bouchikhi v. Holder*, 676 F.3d 173, 176 (5th Cir. 2012) (per curiam).

[8] *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014) (per curiam) (citation omitted) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005)).

regulatory power to *sua sponte* reopen proceedings under either 8 C.F.R. § 1003.23(b) or 8 C.F.R. § 1003.2(a);[9] or (2) he can invoke his statutory right to reopen proceedings under 8 U.S.C. § 1229a(c)(7). The Attorney General has promulgated two different regulations—one that applies to the Immigration Court[10] and one that applies to the BIA[11]—that prevent aliens who have departed the United States from filing either type of motion to reopen. As interpreted by the BIA,[12] these regulations (collectively referred to as the "departure bar") categorically strip the BIA and the Immigration Court of jurisdiction to consider motions to reopen filed by departed aliens.

This Court has adjudicated two significant challenges to the departure bar. In *Navarro-Miranda v. Ashcroft*,[13] we addressed a challenge to the departure bar as applied to regulatory motions to *sua sponte* reopen proceedings. Navarro argued that the BIA had misinterpreted the departure bar as a jurisdictional limit on its power to *sua sponte* reopen proceedings under § 1003.2(a). That is, he argued that the BIA had incorrectly interpreted the interplay of two of its own regulations.[14] After examining the regulations closely, we concluded that the BIA's interpretation of the two regulations was reasonable and upheld the application of the departure bar to regulatory motions to reopen.[15]

In *Garcia-Carias v. Holder*,[16] this Court considered a challenge to the departure bar as applied to statutory motions to reopen. Garcia argued that

---

[9] The Immigration Court's regulatory authority is governed by § 1003.23(b) while the BIA's regulatory authority is governed by § 1003.2(a).

[10] 8 C.F.R. § 1003.23(b)(1).

[11] *Id.* § 1003.2(d).

[12] *See Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646, 648-49 (B.I.A. 2008).

[13] 330 F.3d 672 (5th Cir. 2003).

[14] *Id.* at 675 ("[T]he Board has concluded that § [100]3.2(d) trumps the power granted by § [100]3.2(a) where the alien has been deported; Navarro challenges this interpretation.").

[15] *See id.* at 675-76.

[16] 697 F.3d 257 (5th Cir. 2012).

the departure bar represented an unreasonable interpretation of 8 U.S.C. § 1229a(c)(7). This time, we agreed and invalidated the departure bar as applied to statutory motions to reopen. Applying the *Chevron* framework, we explained that § 1229a(c)(7)—which provides that "[a]n alien may file one motion to reopen proceedings under this section"—"unambiguously gives aliens a right to file a motion to reopen regardless of whether they have left the United States."[17] Accordingly, "we h[e]ld that the Board's application of the departure regulation to statutory motions to reopen [wa]s invalid under *Chevron*'s first step as the statute plainly does not impose a general physical presence requirement."[18]

### B.

Lugo-Resendez argues that—under *Garcia-Carias*—the IJ should not have applied the departure bar because he filed a statutory motion to reopen. The Government responds that *Garcia-Carias* is inapposite. Rather, the Government asserts that our decision in *Ovalles v. Holder* is controlling.[19] Ovalles, like Garcia, challenged the departure bar as applied to statutory motions to reopen. As support, he relied on a Fourth Circuit decision that invalidated the departure bar for the same reasons as *Garcia-Carias*.[20] In contrast to *Garcia-Carias*, however, this Court did not resolve Ovalles's statutory argument. "Without passing judgment on the merits of the Fourth Circuit's decision," we noted that Ovalles's motion was "facially and concededly untimely." Consequently, we concluded that Ovalles could not file a motion to reopen under § 1229a(c)(7) because he had failed to comply with the statutory requirements.[21] Instead, he was limited to filing a regulatory motion to *sua*

---

[17] *Id.* at 263.
[18] *Id.* at 264.
[19] 577 F.3d 288 (5th Cir. 2009) (per curiam).
[20] *See id.* at 293-95 (discussing *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007)).
[21] *See id.* at 295-96.

*sponte* reopen proceedings, which meant that—under *Navarro-Miranda*—the BIA acted reasonably in applying the departure bar.[22]

In *Garcia-Carias*, this Court explicitly distinguished *Ovalles*. The *Garcia-Carias* panel explained that *Ovalles* was "not controlling" because Ovalles's motion "was untimely."[23]   By contrast, the motion reviewed in *Garcia-Carias* might have been timely.  Even though Garcia filed his motion to reopen more than five years after his removal,[24] we declined to decide whether it was timely because the BIA had not addressed the issue below.[25] This left open the possibility that the BIA might accept Garcia's contention that his motion was timely either because "he filed it 'less than ninety days and within a reasonable time of when he first became aware of the possibility of seeking to reopen his immigration proceedings pursuant to [*Lopez*]'" or because "equitable tolling rendered the motion timely."[26]   In this case, the Government contends the facts are different because the BIA did address timeliness—and concluded that Lugo-Resendez's motion was untimely. Therefore, the Government urges us to apply *Ovalles*, not *Garcia-Carias*.

C.

The parties' dispute reduces to the question of whether Lugo-Resendez filed a *statutory* motion to reopen or a *regulatory* motion to reopen.  If Lugo-Resendez filed a statutory motion to reopen, then *Garcia-Carias* prevents the application of the departure bar.  But if Lugo-Resendez filed a regulatory motion to reopen, then *Navarro-Miranda* allows the application of the

---

[22] *See id.* at 296-97.

[23] 697 F.3d at 265.

[24] *Compare id.* at 259 ("Garcia was removed from the United States in November 2005 . . . ."), *with id.* at 260 ("On December 27, 2010, Garcia filed a motion to reopen his proceedings with the Immigration Judge.").

[25] *See id.* at 261 n.1.

[26] *Id.* at 260 (alteration in original).

departure bar.  Contrary to Lugo-Resendez's suggestion, this question cannot be answered simply by looking at how he framed or labeled his motion to reopen.  Under *Ovalles*, a motion to reopen that does not comply with the requirements of § 1229a(c)(7) must be construed as a regulatory motion to reopen—even if it is labeled as a statutory motion to reopen.  Here, the only disputed requirement is timeliness.  The Government has steadfastly maintained throughout this litigation that Lugo-Resendez's motion is untimely because it was filed more than 90 days after the March 2003 order of removal.  As a result, it presses this Court to construe Lugo-Resendez's motion as a regulatory motion to reopen and apply *Navarro-Miranda*.

The Government's position, however, is based upon a faulty premise.  Although Lugo-Resendez's motion to reopen was filed more than 90 days after the March 2003 order of removal, this does not mean that it was untimely.  *Ovalles* may seem to suggest that compliance with the deadline is conclusive, but the alien in *Ovalles* "conceded[]" that his motion to reopen was untimely.[27]  Lugo-Resendez makes no such concession.  Rather, he urges that he is entitled to equitable tolling of the 90-day deadline.  "If an alien qualifies for equitable tolling of the time and/or numerical limitations on a motion to reopen, the motion is treated as if it were the one the alien is statutorily entitled to file."[28]  That is, if Lugo-Resendez is entitled to equitable tolling, then his motion to reopen *was* timely and he can invoke § 1229a(c)(7).  The IJ, like the Government, skipped a step of the analysis.  Instead of acknowledging that the 90-day deadline had passed and then analyzing whether the deadline should be equitably tolled, the IJ treated compliance with the deadline as conclusive.

---

[27] 577 F.3d at 296; *see also id.* at 299.
[28] *Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011).

As four circuits have (at least implicitly) recognized, this was error.[29] We thus conclude that the BIA abused its discretion by ignoring Lugo-Resendez's equitable tolling argument.

D.

We turn to the appropriate remedy for this error. Despite numerous opportunities to do so, this Court has not decided whether equitable tolling applies to the 90-day deadline for filing a motion to reopen under § 1229a(c)(7). Until recently, "[i]n this circuit, an alien's request for equitable tolling . . . [wa]s construed as an invitation for the BIA to exercise its discretion to reopen the removal proceeding *sua sponte*."[30] And because "the BIA has complete discretion in determining whether to reopen *sua sponte* under 8 C.F.R. § 1003.2(a)," this Court's practice was to dismiss such a recharacterized request for lack of jurisdiction.[31] In *Mata v. Lynch*, the Supreme Court rejected this jurisdictional rule and instructed this Court to stop recharacterizing requests to equitably toll the deadline for filing a statutory motion to reopen.[32] The Supreme Court, however, expressly left open the merits question of "whether or when the INA allows the Board to equitably toll the 90-day period to file a motion to reopen."[33] But as the Court noted,[34] nine other circuits *have* addressed this question.[35] Every single one has held that the deadline for filing

---

[29] *See Bolieiro v. Holder*, 731 F.3d 32, 38-40 (1st Cir. 2013); *Ortega-Marroquin v. Holder*, 640 F.3d 814, 819-20 (8th Cir. 2011); *Valdovinos-Lopez v. Att'y Gen.*, 628 F. App'x 817, 820 (3d Cir. 2015) ("The Government's assumption is mistaken. If Valdovinos-Lopez is entitled to equitable tolling, and if equitable tolling would make his motion to reopen a timely one, then the motion would be statutory—not *sua sponte*."); *Lisboa v. Holder*, 570 F. App'x 468, 473-74 (6th Cir. 2014).

[30] *See Mata v. Holder*, 558 F. App'x 366, 367 (5th Cir. 2014) (per curiam) (citing *Ramos-Bonilla v. Mukasey*, 543 F.3d 216, 220 (5th Cir. 2008)), *rev'd*, 135 S. Ct. 2150 (2015).

[31] *Id.*

[32] 135 S. Ct. at 2155-56.

[33] *See id.* at 2155 n.3.

[34] *See id.* at 2154 n.1 (collecting cases).

[35] *See Kuusk v. Holder*, 732 F.3d 302, 305 (4th Cir. 2013); *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1364 (11th Cir. 2013) (en banc) (per curiam); *Alzaarir v. Att'y Gen.*, 639

a statutory motion to reopen is subject to equitable tolling in certain circumstances.[36] We are persuaded by the reasoning of these cases and join our sister circuits in holding that the deadline for filing a motion to reopen under § 1229a(c)(7) is subject to equitable tolling.

We decline, however, to determine whether the deadline should be equitably tolled in the instant case.[37] The Supreme Court has instructed that "the proper course, except in rare circumstances" is to "remand a case to an agency for decision of a matter that statutes place primarily in agency hands."[38] This "ordinary remand rule"[39] has even more force here because "[t]he record before the court is not sufficiently developed for us to engage in the fact-intensive determination of whether equitable tolling is appropriate."[40] Indeed, although the parties have briefed the applicable case law, they have discussed the relevant facts only in passing. As a result, even putting aside the "ordinary remand rule," this appellate court is unable to properly analyze whether equitable tolling is appropriate.

### E.

On remand, we instruct the BIA to apply the same equitable tolling

---

F.3d 86, 90 (3d Cir. 2011) (per curiam); *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008); *Yuan Goa v. Mukasey*, 519 F.3d 376, 377 (7th Cir. 2008); *Hernandez-Moran v. Gonzales*, 408 F.3d 496, 499-500 (8th Cir. 2005); *Riley v. INS*, 310 F.3d 1253, 1257-58 (10th Cir. 2002); *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1190-93 (9th Cir. 2001) (en banc); *Iavorski v. INS*, 232 F.3d 124, 129-33 (2d Cir. 2000) (Sotomayor, J.).

[36] *See Mata*, 135 S. Ct. at 2156 ("[A]ll appellate courts to have addressed the matter have held that the Board may sometimes equitably toll the time limit for an alien's motion to reopen."); *Kuusk*, 732 F.3d at 305.

[37] *See, e.g.*, *Bolieiro v. Holder*, 731 F.3d 32, 40 (1st Cir. 2013) (remanding to allow the BIA to consider in the first instance whether equitable tolling applied); *Ortega-Marroquin v. Holder*, 640 F.3d 814, 820 (8th Cir. 2011) (same); *Valdovinos-Lopez v. Att'y Gen.*, 628 F. App'x 817, 821 (3d Cir. 2015) (same); *Lisboa v. Holder*, 570 F. App'x 468, 474 (6th Cir. 2014) (same).

[38] *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

[39] *Gonzales v. Thomas*, 547 U.S. 183, 187 (2006) (per curiam) (quoting *Ventura*, 537 U.S. at 18).

[40] *Rivera v. Quarterman*, 505 F.3d 349, 354 (5th Cir. 2007).

standard that this Court uses in other contexts.[41]   Under this standard, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"[42]  The first element requires the litigant to establish that he pursued his rights with "'reasonable diligence,' not 'maximum feasible diligence.'"[43]   The second element requires the litigant to establish that an "extraordinary circumstance" "beyond his control" prevented him from complying with the applicable deadline.[44]

Apart from these general principles, the doctrine of "equitable tolling does not lend itself to bright-line rules."[45]  "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate."[46]   In a case such as this one, the BIA should give due consideration to the reality that many departed aliens are poor, uneducated, unskilled in the English language, and effectively unable to follow developments in the American legal system—much less read and digest complicated legal decisions.  The BIA should also take care not to apply the equitable tolling standard "too harshly" because denying an alien the opportunity to seek cancellation of removal—when it is evident that the basis for his removal is now invalid—"is a particularly serious matter."[47]  As the

---

[41] *See Kuusk*, 732 F.3d at 306 ("[E]ach of our sister circuits applies, in immigration cases, its general standard for equitable tolling.").

[42] *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

[43] *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (quoting *Holland*, 560 U.S. at 653).

[44] *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam); *see also Menominee Indian Tribe*, 136 S. Ct. at 756.

[45] *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).

[46] *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (per curiam).

[47] *Manning*, 688 F.3d at 183-84 (quoting *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002)).

No. 14-60865

Supreme Court recently reminded, the core purpose of equitable tolling is to escape the "evils of archaic rigidity" and "to accord all the relief necessary to correct . . . particular injustices."[48]  For now, we leave it to the BIA to determine whether this case presents an injustice that warrants correction.[49]

## IV.

For the reasons stated above, we GRANT the petition for review and REMAND to the BIA for further proceedings not inconsistent with this opinion.

---

[48] *Holland*, 560 U.S. at 650 (ellipsis in original) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)).

[49] Because we grant Lugo-Resendez's petition for review and remand to the BIA, we need not reach his procedural complaints about the BIA's decision. *See Siwe v. Holder*, 742 F.3d 603, 613-14 (5th Cir. 2014).

12