# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60580

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2020

Lyle W. Cayce
Clerk

DENIS NOE MEJIA,

     Petitioner,

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

     Respondent.

Petitions for Review of the Order of the
Board of Immigration Appeals

Before HAYNES and OLDHAM, Circuit Judges, and HANEN,* District Judge.
ANDREW S. OLDHAM, Circuit Judge:

Petitioner Denis Noe Mejia, a Honduran citizen, entered the country unlawfully in February 2006. Also in 2006, the Government ordered him removed *in absentia.* There is no dispute Mejia received that removal order. But rather than challenge the order in 2006, Mejia waited ten years to file a motion to reopen. The Board of Immigration Appeals ("BIA") denied relief, finding his delay inexcusable. We agree.

---

* District Judge of the Southern District of Texas, sitting by designation.

No. 17-60580

I.

A.

In June 2006, Mejia was personally served with a notice to appear ("NTA"). The NTA explained there would be a hearing to determine his removability, but it did not set a place or time for the hearing. That August, the Government mailed Mejia a notice of hearing ("NOH"). The NOH advised Mejia that the hearing would be held in November 2006 in New Orleans. Mejia says he did not receive the NOH.

Mejia did not attend the November hearing, and the immigration judge ordered him removed *in absentia*. Sometime after the hearing—it's unclear exactly when—Mejia received the removal order.[1] But, for the better part of a decade, Mejia made no attempt to challenge the order. Only in 2016—when he thought he'd be eligible for cancellation of removal because of his marriage to an American citizen—did he tell the Government that he'd never received the NOH. Mejia asked the immigration court to reopen and administratively close his removal proceedings, which would allow him to seek lawful permanent residence in this country.

Here's the catch: A motion to reopen ordinarily must be filed within 90 days of the removal order. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1). That deadline had passed years ago. So Mejia requested equitable tolling of the 90-day period. *See Lugo-Resendez v. Lynch*, 831 F.3d 337, 344 (5th Cir. 2016) (holding "that the deadline for filing a motion to reopen . . . is subject to equitable tolling"). Alternatively, he relied on 8 U.S.C. § 1229a(b)(5)(C)(ii), which permits "a motion to reopen [to be] filed at any time if the alien

---

[1] Mejia changed his address in December 2006. Because the November 2006 deportation order would have been sent to his original address, we can surmise he learned of the order within a month after it was entered.

No. 17-60580

demonstrates that [he] did not receive [a] notice [to appear] in accordance with . . . section 1229(a) . . . ."

The immigration judge ("IJ") denied the motion. She refused to toll the deadline because the unexplained ten-year delay showed a "lack of due diligence." *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing . . . that he has been pursuing his rights diligently . . . ."). And she declined to reopen under § 1229a(b)(5)(C)(ii) because Mejia had failed to "request[] reopening . . . within a reasonable period following his receipt of the order of removal." The BIA affirmed.[2] And, in 2017, Mejia timely petitioned this Court to review the BIA's order.

### B.

Before we could rule on the petition, the Supreme Court decided *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). In that case, the Court held that a § 1229(a) notice to appear must contain the time and place of the removal proceedings. *Id.* at 2110. Without those details, service of the NTA does not trigger the "stop-time rule," a mechanism that prevents an alien from accruing the ten years of continuous physical presence in the U.S. required to become eligible for cancellation of removal. *Ibid.* We stayed consideration of Mejia's petition so he could ask the BIA to reconsider its decision in light of *Pereira*.

In June 2018, Mejia filed a second motion to reopen, which he styled in the alternative as a motion to reconsider the first motion to reopen. Mejia argued that, because his NTA omitted the time and place of the hearing, the NTA was invalid and the IJ lacked jurisdiction to order him removed *in*

---

[2] Mejia asserted in an affidavit that he did not receive the NOH. The IJ never took a position as to whether Mejia received the NOH, noting only that "a Respondent's sworn affidavit *could* be sufficient to overcome the . . . presumption for receipt of notice." (Emphasis added). Similarly, the BIA did not indicate whether it considered that presumption overcome. The BIA and IJ both rested their decisions on other grounds.

No. 17-60580

*absentia* in 2006. Mejia also argued that the defective notice to appear failed to trigger the stop-time rule under *Pereira*. If true, this meant he had accrued 10 years of continuous physical presence in the country, so the BIA should reopen his case and allow him to apply for cancellation of removal.

Again, the BIA disagreed. To start, it noted that this motion to reopen was untimely. *See* 8 C.F.R. § 1003.2(c)(2) (motion to reopen a BIA decision "must be filed no later than 90 days" after that decision). The second motion also fell afoul of the immigration system's one-motion-to-reopen rule. *See* 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen proceedings."); 8 C.F.R. § 1003.2(c)(2) ("[A] party may file only one motion to reopen deportation or exclusion proceedings."). When treated as a motion to reconsider, the filing fared no better—those sorts of motions "must be filed with the Board within 30 days after the mailing of the Board decision." 8 C.F.R. § 1003.2(b)(2). This one was not.

The BIA also rejected Mejia's arguments on the merits. It took the view that Mejia did in fact receive the NOH. And because the NOH mentioned the time and place of the removal proceeding, it cured the deficiency in the NTA. So the IJ *did* have jurisdiction to rule in Mejia's absence; the stop-time rule *was* triggered; and Mejia was ineligible for cancellation of removal.

Mejia filed a petition to review the BIA's second ruling. We consolidated it with the original petition.

## II.

Mejia presents four arguments in his consolidated petition: (1) the BIA should have equitably tolled the 90-day deadline to file a motion to reopen; (2) the BIA erred when it refused to reopen his *in absentia* proceedings under 8 U.S.C. § 1229a(b)(5)(C)(ii); (3) under *Pereira*, the IJ who ordered him removed lacked jurisdiction to do so because the NTA was defective; and (4) the

4

BIA should have reopened his proceedings so he could apply for cancellation of removal.

Successfully challenging the denial of a motion to reopen is no easy feat. "[M]otions to reopen deportation proceedings are disfavored, and the moving party bears a heavy burden." *Altamirano-Lopez v. Gonzales*, 435 F.3d 547, 549 (5th Cir. 2006) (quotation omitted). We apply a "highly deferential abuse-of-discretion standard," and only grant the petition if the BIA's decision "is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies." *Lugo-Resendez*, 831 F.3d at 340 (quotation omitted). Under these deferential standards, we consider and reject each of Mejia's arguments in turn.

A.

First, the equities of tolling. An immigration judge may, in her discretion, toll the deadline to file if the alien shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lugo-Resendez*, 831 F.3d at 344 (quotation omitted). "The first element requires the litigant to establish that he pursued his rights with reasonable diligence, not maximum feasible diligence. The second element requires the litigant to establish that an extraordinary circumstance beyond his control prevented him from complying with the applicable deadline." *Ibid.* (quotation omitted). Applying this test, the BIA and IJ were not wrong—and were certainly not capricious or irrational—when they found that Mejia's unexplained ten-year delay evidenced a lack of diligence.

Mejia insists that he *did* act diligently because his wife applied for a visa on his behalf in 2013, as soon as the Government introduced a rule that was

No. 17-60580

favorable to unlawfully present aliens. But "reasonable diligence" means "within a reasonable time." It does not mean "within a reasonable time but only when you think you can win." In all events, a seven-year unexplained delay between learning of a removal order and trying to undo it is still long enough for the BIA to conclude that Mejia did not act diligently.

B.

Next, the motion to reopen under 8 U.S.C. § 1229a(b)(5)(C). That provision directs that a removal order:

> may be rescinded only—
>
> (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances . . . , or
>
> (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive [a notice to appear].

*Ibid.* Mejia argues that "at any time" in subparagraph (ii) means a motion to reopen can never be untimely.

In our view, the statutory text cannot bear the weight Mejia would place on it. *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2019) ("text may never be taken out of context"); ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 356 (2012) ("Adhering to the *fair meaning* of the text (the textualist's touchstone) does not limit one to the hyperliteral meaning of each word in the text."). Ordinarily, a motion to reopen must be filed within 90 days of the removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But, even after that deadline, § 1229a(b)(5)(C) gives the IJ the power to reopen an immigration proceeding. That power is discretionary—that's why the text says she "may" rescind an order under certain circumstances, not that she "must." *See Gomez-Palacios v. Holder*, 560 F.3d 354, 361 n.2 (5th Cir. 2009) (describing the decision to reopen as "discretionary").

Still, the IJ "may . . . *only*" exercise that discretion if the conditions in subsections (i) or (ii) of § 1229a(b)(5)(C) are satisfied. Subsection (i) extends the period during which the IJ may exercise her discretion to 180 days after the order, if exceptional circumstances are present. 8 U.S.C. § 1229a(b)(5)(C)(i). Subsection (ii) goes even further, allowing the IJ to *consider* reopening the case "at any time," but only if the alien didn't receive an NTA. *Id.* § 1229a(b)(5)(C)(ii). In other words, if the IJ finds that the alien never received a notice, the IJ may—but need not—exercise her discretion after the ordinary 90-day or exceptional 180-day period has come and gone.

The IJ had ample reason not to exercise that discretion here. As one of our sister circuits put it in a similar case:

> [Petitioner's] lack of due diligence in pursuing her motion to rescind provided a sufficient basis for the BIA and the IJ to exercise their discretion to deny it. The BIA and the IJ found as a matter of fact that [Petitioner] waited multiple years to pursue her motion to rescind because she was waiting until she became eligible for an immigration benefit by virtue of her marriage. Gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme.

*Patel v. Holder*, 389 F. App'x 19, 21 (2d Cir. 2010) (quotation omitted). So too here: The IJ found that Mejia "waited to file for . . . relief until after he became eligible for a provisional waiver of unlawful presence and adjustment by way of his wife's petition for an alien relative." And the BIA adopted these findings. The Board would not condone such gamesmanship. Neither will we.

Mejia rejoins that the "impos[ition of] a time limit" denied him "fair notice and a meaningful opportunity to be heard before an IJ," in violation of his right to due process. Not so. Mejia had been on notice of the proceedings for ten years. He had ample opportunity to be heard. His motion was denied because he chose instead to wait. In any event, a denial of a motion to reopen cannot violate the Due Process Clause because "[t]he decision to grant or deny

a motion to reopen is purely discretionary" and does not implicate a liberty interest. *Altamirano-Lopez*, 435 F.3d at 550; *see also Gomez-Palacios*, 560 F.3d at 361 n.2 (similar). Mejia's due-process contention is unavailing.

C.

That leaves the two arguments Mejia raised in his second motion: that the IJ lacked jurisdiction to enter a removal order, and that he is eligible for cancellation of removal. We can readily dispense with the latter claim. The BIA was correct to note that his motion to reconsider was filed out of time. *See* 8 C.F.R. § 1003.2(b)(2). And the statute and regulations generally limit an alien to one motion to reopen. *See* 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2). So it doesn't matter whether we characterize the second filing as a motion to reconsider or as a second motion to reopen. Either way, the BIA had no obligation to reach the merits.

But these technical issues do not necessarily doom Mejia's jurisdictional argument. "Unlike most arguments," challenges to subject-matter jurisdiction "may be raised . . . at any point in the litigation . . . ." *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quotation omitted). And, regardless of the parties' positions, "we have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).

Mejia contends that receipt of a notice to appear is a jurisdictional prerequisite for an IJ to hold an *in absentia* removal hearing. And because Mejia didn't receive an NTA with a place and time for his hearing (as required by *Pereira*), he says the IJ had no jurisdiction to order him removed.

We have previously rejected a virtually identical argument. *See Pierre-Paul v. Barr*, 930 F.3d 684, 691 (5th Cir. 2019). In *Pierre-Paul*, the alien argued his NTA was defective because it omitted the date and time of his initial

hearing. Therefore, the alien argued, jurisdiction never vested in the IJ under 8 C.F.R. § 1003.14, which is entitled "Jurisdiction and commencement of proceedings." We rejected the argument both because "the immigration court cured the defect by subsequently mailing a notice of hearing that contained the time and date of the initial hearing," *id.* at 690, and because "8 C.F.R. § 1003.14 is not jurisdictional but is a claim-processing rule," *id.* at 691.

Mejia attempts to avoid these holdings by saying his NTA is jurisdictionally defective under 8 U.S.C. § 1229a(b)(5)(A)—regardless of *Pierre-Paul*'s interpretation of the regulation. He provides no authority or explanation for this proposition. And nothing in § 1229a(b)(5)(A) suggests it carries jurisdictional consequences. But even if the NTA was defective, Mejia's decision to raise the issue for the first time in his second motion means it's forfeited unless it's jurisdictional. *See Fort Bend Cty.*, 139 S. Ct. at 1849 ("[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point." (quotation omitted)).

We hold Mejia is wrong; any defect in his NTA does not constitute jurisdictional error under § 1229a(b)(5)(A). For a rule to be jurisdictional, Congress must have "clearly stated that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quotation omitted). "[A]bsent such a clear statement, . . . courts should treat the restriction as nonjurisdictional in character." *Ibid.* (quotation omitted).

Congress need not "incant magic words in order to speak clearly." *Ibid.* Still, the Supreme Court appears to require at least *some* mandatory language. *See, e.g., id.* at 154 (holding that a provision was not jurisdictional because it lacked "the mandatory word 'shall'"). And even that might not be enough. *See, e.g., United States v. Kwai Fun Wong*, 575 U.S. 402, 411 (2015) (rejecting an argument that a provision was jurisdictional even though "[t]he language [wa]s

mandatory" because "that is true of most [limitations] statutes, and we have consistently found it of no consequence").

In light of this guidance, we struggle to find a clear statement in 8 U.S.C. § 1229a(b)(5)(A):

> Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title [*i.e.* the NTA] has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2)).

The subsection says that an *in absentia* removal order is proper "if" the Government establishes service of the NTA. Congress did not employ mandatory language, as it did elsewhere in the section. *See, e.g.*, § 1229a(c)(1)(A) ("The determination of the immigration judge *shall* be based *only* on the evidence produced at the hearing." (emphases added)). So mandatory language—which is necessary but not sufficient—is lacking.

And there is nothing else to indicate that the IJ's jurisdiction hinges on the alien's actual receipt of a valid NTA. To the contrary, the remedy for lack of notice is not vacatur, as one might expect if the IJ lacked jurisdiction. It is reopening at the IJ's discretion. *See supra* Part II.B. A discretionary remedy is hardly the stuff of mandatory jurisdiction. *Cf. Kwai Fun Wong*, 575 U.S. at 408–09 (noting that a "failure to comply with" a jurisdictional prerequisite "deprives a court of all authority to hear a case"). The § 1229a(b)(5)(A) notice requirement is therefore a claim-processing rule that Mejia has raised too late.[3]

---

[3] In so holding, we join several of our sister circuits that have also concluded that § 1229a(b)(5)(A) is not jurisdictional. *See Santos-Santos v. Barr*, 917 F.3d 486, 490 (6th Cir. 2019); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963–64 (7th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160–62 (9th Cir. 2019); *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1153–54 (11th Cir. 2019).

No. 17-60580

\*     \*     \*

Inaction, no less than action, has consequences. When Mejia discovered that he had been ordered removed *in absentia*, he could have immediately applied to reopen his proceedings. He did not, and he lost the chance to have his case administratively closed. When Mejia moved to reopen, he could have raised all his arguments in the first motion. He did not, and he lost the chance to have half of them decided on the merits. Both petitions for review are DENIED.