**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIZABETH LONA, AKA Lisa
Elizabeth Lona, AKA Lisa Luna,
AKA Chata Monkiker,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 17-70329

Agency No.
A090-045-915

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 5, 2019
San Francisco, California

Filed May 15, 2020

Before: Ronald M. Gould and Consuelo M. Callahan,
Circuit Judges, and Stephen R. Bough,* District Judge.

Opinion by Judge Callahan

---

*The Honorable Stephen R. Bough, United States District Judge for
the Western District of Missouri, sitting by designation.

## SUMMARY[**]

### Immigration

Denying Elizabeth Lona's petition for review of the Board of Immigration Appeals' decision affirming the denial of her motion for reconsideration, the panel held that: (1) the BIA's denial of equitable tolling was not unreasonable; (2) notwithstanding the BIA's precedent regarding fundamental changes in the law, the BIA's denial of sua sponte reconsideration was not premised on legal or constitutional error; and (3) Lona's "settled course of adjudication" argument is barred by the general rule that the court lacks jurisdiction to review claims that the BIA should have exercised its sua sponte power in a given case.

In 2013, Lona was removed to Mexico based on an aggravated felony conviction, which related to her California convictions for petty theft and/or burglary. Over two and a half years later, she moved for reconsideration in light of new case law, including *Lopez-Valencia v. Lynch*, 798 F.3d 863 (9th Cir. 2015), which held that convictions under California's theft statute are categorically not aggravated felonies. First, she argued that *Lopez-Valencia*, and other decisions, fundamentally changed the law, invalidating the aggravated felony status of her convictions and her basis for removal. Second, she argued that she was entitled to equitable tolling of the thirty-day timeline for reconsideration. Third, she cited BIA precedent holding that a significant development in the law constitutes an

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"exceptional circumstance" warranting the agency's exercise of its sua sponte authority to reopen or reconsider cases. The IJ denied the motion, and the BIA affirmed.

First, responding to Lona's argument that the BIA erred by not addressing her equitable tolling claim, the panel concluded that the BIA implicitly rejected that claim. The panel inferred the BIA's decision to mean that, regardless of whether the change in law effected by *Lopez-Valencia* was "fundamental," Lona was not entitled to equitable tolling because (1) she failed to act with due diligence in discovering and raising the error asserted by Lopez-Valencia before the BIA and later, successfully before this court; and (2) she failed to do so despite the lack of impediments to obtaining vital information bearing on the existence of the claim. The panel agreed, explaining that Lona alleged no facts suggesting diligence, or that some extraordinary circumstance prevented her from timely filing her motion.

Second, the panel rejected Lona's contention that the BIA's denial of sua sponte reconsideration was premised on or amounted to "legal or constitutional error" that is reviewable under *Bonilla v. Lynch*, 840 F.3d 575 (9th Cir. 2016). The panel explained that review under *Bonilla* is limited to those situations where it is obvious that the agency has denied sua sponte relief not as a matter of discretion, but because it erroneously believed that the law forbade it from exercising its discretion, or that exercising its discretion would be futile. The panel found no such error in the BIA's decision here.

Third, the panel rejected Lona's argument that the BIA's decision was contrary to its previous decisions holding that a fundamental change in the law is an exceptional circumstance warranting *sua sponte* reopening. The panel

viewed the argument as a tacit invocation of the Third Circuit's "settled course of adjudication" doctrine. The panel explained that the Supreme Court case on which the Third Circuit based its "settled course" review is directly at odds with the Third Circuit's approach, and that "settled course" review is incompatible with the general rule that the court lacks jurisdiction to review claims that the BIA should have exercised its sua sponte power in a given case. The panel further explained that "settled course" review is abuse-of-discretion review, as it asks the court to evaluate the BIA's exercise of its sua sponte authority in a given case against its decisions in past cases to consider whether the BIA may have irrationally departed from its settled practice. But, the court explained, this is precisely what the court's case law prohibits: weighing the wisdom of the BIA's decision in any given case.

## COUNSEL

Ana F. Barhoum (argued), Olmos & Barhoum LLP, San Jose, California; Jennie I. Medina (argued), Mira Law Group A.P.C., San Leandro, California; Mei F. Chen, Canton, Georgia; for Petitioner.

Micah Engler (argued), Trial Attorney; Andrew N. O'Malley, Senior Litigation Counsel; Cindy S. Ferrier, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

CALLAHAN, Circuit Judge:

Four years ago, in *Bonilla v. Lynch*, 840 F.3d 575 (9th Cir. 2016), we addressed how changes in immigration law "affect an individual ordered deported from the United States when, as it turns out, the law concerning the grounds for deportation, or for denial of relief from deportation, changes after the individual is ordered deported." *Id.* at 578. We reaffirmed that the decision to grant or deny sua sponte relief in such circumstances is "committed to agency discretion by law and, therefore, unreviewable." *Mejia-Hernandez v. Holder*, 633 F.3d 818, 823 (9th Cir. 2011). At the same time, we held we have jurisdiction to review Board of Immigration Appeals (BIA) denials of sua sponte reconsideration or reopening for "legal or constitutional error." *Bonilla*, 840 F.3d at 588.

*Bonilla* remains settled law in the Ninth Circuit. BIA denials of sua sponte relief premised on legal or constitutional error remain the "one narrow exception" to our rule that the agency's sua sponte authority is not subject to judicial review. *Menendez-Gonzalez v. Barr*, 929 F.3d 1113, 1116 (9th Cir. 2019). However, in *Menendez-Gonzalez*, we alluded to a potential expansion of *Bonilla* in cases where "petitioners 'establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed for abuse.'" *Id.* at 1117 (quoting *Sang Goo Park v. Attorney Gen.*, 846 F.3d 645, 653 (3d Cir. 2017)).

The petitioner,[1] Elizabeth Lona, seeks to take advantage of this language, asking us to exercise our limited jurisdiction under *Bonilla* to reverse the BIA's denial of reconsideration based on "a fundamental change in the law" that occurred two years *after* she was ordered removed, waived her appeal, and was removed to Mexico. She points to BIA precedent that such changes qualify as "exceptional situations" warranting sua sponte relief and cites similar cases where the BIA granted sua sponte reopening or reconsideration. She also argues the BIA should have excused her untimeliness by applying equitable tolling.

We hold that: (1) the BIA's denial of equitable tolling was not unreasonable; (2) notwithstanding the BIA's precedent regarding fundamental changes in the law, the BIA's denial of sua sponte reconsideration here was not premised on legal or constitutional error; and (3) Lona's "settled course" argument is barred by our general rule that we lack jurisdiction to review claims "that the BIA should have exercised its *sua sponte* power" in a given case. *Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002). Accordingly, we deny the petition for review.

## I

Elizabeth Lona is a native and citizen of Mexico. She entered the United States in 1974, the year she was born, and became a lawful permanent resident in 1989.

---

[1] We use the term "petitioner" to refer to the party so described in this court, the person seeking relief from an order of removal. In proceedings before the BIA and the immigration court, that person is denominated the "respondent." We attempt to minimize confusion by using "respondent" only when necessary.

In 2009, Lona was convicted of petty theft and petty theft with priors in violation of California Penal Code sections 484 and 666. Two years later, she was convicted of second-degree burglary, in violation of California Penal Code section 459, and was placed in removal proceedings. Lona applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), citing generalized fears of persecution and torture in Mexico due to her sexual orientation. An Immigration Judge ("IJ") denied these applications and summarily ordered Lona removed based on her aggravated felony conviction.[2] Lona moved to withdraw her right to appeal to the BIA, the IJ granted her motion, and in April 2013 she was removed to Mexico.

Over two and a half years later, Lona moved for reconsideration of her final removal order in light of *Lopez-Valencia v. Lynch*, 798 F.3d 863 (9th Cir. 2015), *Rendon v.*

---

[2] *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. § 1101(a)(43)(G) (defining "aggravated felony" to include, *inter alia*, "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year"). The IJ did not clarify which of Lona's convictions (if not both) counted as an aggravated felony. DHS also alleged removability under 8 U.S.C. § 1227(a)(2)(A)(ii) based on Lona's conviction of two crimes involving moral turpitude ("CIMT"). Lona argues that her second-degree burglary conviction is not a CIMT under *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), and an earlier decision, *Hernandez-Cruz v. Holder*, 651 F.3d 1094 (9th Cir. 2011), and that this alternative grounds for removal is therefore invalid because, at most, she stands convicted of only one CIMT. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1160 (9th Cir. 2009) (holding that petty theft under California Penal Code section 484 is a CIMT). We do not consider this argument because the BIA sustained removability based on the IJ's aggravated felony determination, and not the allegation of two CIMT convictions.

*Holder*, 764 F.3d 1077 (9th Cir. 2014), and *Descamps v. United States*, 570 U.S. 254 (2013). First, she argued that these decisions fundamentally changed the law, invalidating the "aggravated felony" status of her convictions and, therefore, her basis for removal.[3] Second, she argued that she was entitled to equitable tolling of the thirty-day timeline for seeking reconsideration because she filed her motion as soon as she discovered her eligibility for termination of removal proceedings.[4] Third, she cited BIA precedent holding that "[a] significant development in the law constitutes an exceptional circumstance" warranting the agency's exercise of its sua sponte authority to grant relief from removal. *In re Vasquez-Muniz*, 23 I. & N. Dec. 207, 207–08 (BIA 2002).

The Department of Homeland Security (DHS) opposed Lona's motion, arguing that *Descamps* and *Lopez-Valencia* were not "fundamental changes in the law" and that,

---

[3] Under *Lopez-Valencia*, convictions under California's theft statute are never aggravated felonies because the statute is categorically broader than the federal definition of "theft offense" under 8 U.S.C. § 1101(a)(43)(G). 798 F.3d at 867, 871–72. Previously, convictions for petty theft resulting in imprisonment for at least one year (Lona's petty theft conviction resulted in a 16-month sentence) were classified as "aggravated felonies." *United States v. Rivera*, 658 F.3d 1073, 1077–78 (9th Cir. 2011). Likewise, *Rendon*, 764 F.3d at 1084, invalidated the "aggravated felony" status of second-degree burglary under Cal. Penal Code section 459 based on categorical overbreadth, while *Descamps*, 570 U.S. at 265, held that a conviction under section 459 is not a "violent felony" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B).

[4] *See* 8 U.S.C. § 1229a(c)(6)(B) (providing that motions for reconsideration "must be filed within 30 days of the date of entry of a final administrative order of removal"); 8 C.F.R. §§ 1003.2(b)(2), 1003.23(b)(1) (same).

regardless, Lona failed to cite any authority that those cases "are to be applied retroactively after someone has already been removed on an Immigration Judge's order of removal that was valid when it was executed." DHS noted that Lona had withdrawn her right to appeal from her initial order of removal and argued that no exceptions to untimeliness applied. The IJ agreed with DHS and summarily denied Lona's motion.

Lona appealed the IJ's decision to the BIA. Without expressly addressing Lona's equitable tolling argument, the BIA affirmed the IJ's denial of Lona's motion to reconsider as "untimely" and noted that Lona "waived her appeal." The BIA noted that it "must be persuaded that the respondent's situation is truly exceptional" before exercising its sua sponte authority to reconsider and concluded that Lona had not met her burden of persuasion:

> [Lona] argues that . . . *Lopez-Valencia* . . . fundamentally changed the law, such that [her] conviction is no longer an aggravated felony. [She] had a full and fair opportunity to raise arguments similar to the ones accepted in *Lopez-Valencia* but failed to do so. She waived appeal from the Immigration Judge's order of removal and was removed. Her case is final and does not warrant reconsideration.

Accordingly, the BIA dismissed Lona's appeal.

Lona timely petitioned us to review the BIA's decision.

## II

We have jurisdiction under 8 U.S.C. § 1252. *Mata v. Lynch*, 576 U.S. 143, 135 S. Ct. 2150, 2154 (2015); *Avagyan v. Holder*, 646 F.3d 672, 674 (9th Cir. 2011). We generally review the denial of a motion to reconsider a final order of removal for an abuse of discretion, reversing when the denial is "arbitrary, irrational, or contrary to law." *Go v. Holder*, 744 F.3d 604, 609 (9th Cir. 2014) (citation omitted). Where, as here, the BIA denies reconsideration pursuant to its sua sponte authority under 8 C.F.R. § 1003.2(a), we review only for "legal or constitutional error." *Bonilla*, 840 F.3d at 588. If we find such error, we "remand to the BIA so it may exercise its authority against the correct 'legal background.'" *Id.* (quoting *Pllumi v. Attorney Gen.*, 642 F.3d 155, 160 (3d Cir. 2011)).

## III

A motion to reconsider a final order of removal generally must be filed within thirty days of the date of entry of the order. 8 U.S.C. § 1229a(c)(6)(B). The BIA may equitably toll this statutory filing deadline, including in cases where the petitioner seeks excusal from untimeliness based on a change in the law that invalidates the original basis for removal. *See Lugo-Resendez v. Lynch*, 831 F.3d 337, 343–45 (5th Cir. 2016). When equitable tolling is unavailable, the BIA may, in its discretion, exercise its sua sponte authority to "reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a).

In order for an individual to obtain sua sponte relief under 8 C.F.R. § 1003.2(a), "the Board 'must be persuaded that the respondent's situation is truly exceptional.'" *Bonilla*, 840 F.3d at 585 (quoting *In re G–D–*, 22 I. & N.

Dec. 1132, 1134 (BIA 1999)). The BIA has cautioned that its sua sponte authority "is not meant to cure filing defects or circumvent the regulations, where enforcing them might result in hardship." *Id.* (quoting *In re J–J–*, 21 I. & N. Dec. 976, 984 (BIA 1997)). "'[A] fundamental change in the law' that represents 'a departure from established principles'" qualifies as an exceptional circumstance for which "'sua sponte action by the Board is appropriate.'" *Id.* (quoting *In re G–D–*, 22 I. & N. Dec. at 1135). "Importantly, however, the Board is not *required*—by regulation or its own decisions—to reopen proceedings *sua sponte* in exceptional situations." *Id.* (citing *Ekimian*, 303 F.3d at 1158).

Lona makes three arguments in support of her petition. First, she argues that the BIA erred in not addressing her entitlement to equitable tolling of the statutory deadline for seeking reconsideration because she filed her motion "as soon as practicable" after the Ninth Circuit's decision in *Lopez-Valencia*, the timing of which was a circumstance "beyond her control." Second, she argues that the BIA committed "legal error" under *Bonilla* by misconstruing its sua sponte authority to reconsider a final order of removal based on a fundamental change in the law even where, as here, the petitioner waived her initial appeal and was removed. Third, Lona argues that the BIA ignored or misapplied its own precedent "that a fundamental change in the law is an exceptional circumstance which warrants *sua sponte* reopening"—a tacit invocation of the "settled course" exception we discussed in *Menendez-Gonzalez*.

We reject Lona's arguments and hold that the BIA's decision fell within its broad discretion, did not involve legal or constitutional error, and does not entitle her to any relief.

## A

We "recognize[] equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003). In addition, equitable tolling is available where, "despite all due diligence," the party invoking the doctrine "is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (internal quotation marks and citation omitted). Although claims for equitable tolling typically arise in conjunction with claims of ineffective assistance of counsel, *see, e.g.*, *Iturribarria*, 321 F.3d at 898–99, claims based on changes in the law are not unheard of, nor are they prohibited.

In *Lugo-Resendez*, the Fifth Circuit remanded for further factual development of Lugo-Resendez's claim that he was entitled to equitable tolling based on *Garcia-Carias v. Holder*, 697 F.3d 257 (5th Cir. 2012), which reversed the BIA's long-held and unequivocal ban on reopening of removal proceedings once an individual ordered removed has departed the United States (the so-called "departure bar").[5] *Lugo-Resendez*, 831 F.3d at 340–41, 343–45. Upon remand, the BIA found that Lugo-Resendez had "made repeated efforts over the course of approximately 3 years to learn whether his proceedings could be reopened" and

---

[5] *See* 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1) (providing that "[a] motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States").

abandoned these efforts only "because he was told on multiple occasions that there was nothing that could be done about his case and he was unaware that the law affecting his removability could change." *In re: Sergio Lugo-Resendez*, No. AXXX XX0 500, 2017 WL 8787197, at *3 (BIA Dec. 28, 2017). Once Lugo-Resendez became aware of the change in the law effected by *Garcia-Carias*, he took immediate steps to obtain sua sponte relief.[6] *Id.* The BIA held that Lugo-Resendez was entitled to equitable tolling because he "pursu[ed] his rights with 'reasonable diligence'" and "'extraordinary circumstances . . . beyond his control' prevented him from filing his motion" sooner. *Id.* (quoting *Lugo-Resendez*, 831 F.3d at 344).

Here, the BIA implicitly rejected Lona's argument for equitable tolling when it concluded that her motion for reconsideration was "untimely by 2 years and 7 months" and found that Lona "had a full and fair opportunity to raise arguments similar to the ones accepted in *Lopez-Valencia* but failed to do so." We infer this to mean that, regardless of whether the change in law effected by *Lopez-Valencia* was "fundamental," Lona was not entitled to equitable tolling because (1) she failed to act with due diligence in discovering and raising the error asserted by Lopez-Valencia

---

[6] Lugo-Resendez also relied on the Supreme Court's earlier decision in *Lopez v. Gonzales*, 549 U.S. 47 (2006), which invalidated the "aggravated felony" status of his conviction for simple possession and, therefore, the basis for his removal. *Lugo-Resendez*, 831 F.3d at 339. Lugo-Resendez argued that it would have been futile for him to seek reopening based solely on *Lopez* because, until *Garcia-Carias*, the departure bar still applied. *Id.* at 339–40. The BIA agreed. *See In re: Sergio Lugo-Resendez,* 2017 WL 8787197, at *3 (holding that Lugo-Resendez "filed his motion within a reasonable period of time after he learned of the change in law embodied in both *Lopez* and *Garcia-Carias*").

before the BIA and later, successfully, before us; and (2) she failed to do so despite the lack of impediments "to obtain[ing] vital information bearing on the existence of the claim."**[7]** *Socop-Gonzalez*, 272 F.3d at 1193.

We agree. Lona has alleged no facts—before the IJ, the BIA, or on appeal before us—suggesting a diligent pursuit of her rights in the intervening years between her removal and *Lopez-Valencia*; nor has she shown "that some extraordinary circumstance stood in [her] way and prevented timely filing" of her motion based on *Descamps* and *Rendon*, which *Lopez-Valencia* plainly followed. *Lugo-Resendez*, 831 F.3d at 344 (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010))). Unlike the complete reversal of BIA precedent at issue in *Lugo-Resendez*, our holding in *Lopez-Valencia* "[a]dher[ed] to the methodology established by *Descamps* and our follow-on opinion in *Rendon*"—an application of existing law to California's

---

**[7]** Of course, it is preferable that the agency "show its work," as it were, so that we are not left guessing at its reasons for denying relief. Although we could remand for a clearer explanation of why the BIA rejected this aspect of Lona's appeal—*see Viridiana v. Holder*, 646 F.3d 1230, 1238–39 (9th Cir. 2011); *Lugo-Resendez*, 831 F.3d at 343–45— we decline to do so for two reasons. First, "it is pointless to remand if it is clear what the agency decision must be," *Barradas v. Holder*, 582 F.3d 754, 765 n.9 (7th Cir. 2009) (citation and internal quotation marks omitted), and we think it is obvious that the BIA, if we were to remand, would explicitly deny equitable tolling for the reasons we set forth. Second, in this case the determination of whether Lona has demonstrated the diligence necessary for equitable tolling "requires neither factual development nor agency expertise and is properly analyzed by this court." *Rivera v. Lynch*, 816 F.3d 1064, 1078 n.13 (9th Cir. 2016) (citation and internal quotation marks omitted).

theft statute that we characterized as "not complicated." *Lopez-Valencia*, 798 F.3d at 866, 869.

Given the lack of evidence that Lona took any action prior to our decision in *Lopez-Valencia* and the obvious and uncomplicated nature of her underlying claim, we hold that the BIA's implicit denial of Lona's claim for equitable tolling was not "arbitrary, irrational, or contrary to law." *Go*, 744 F.3d at 609. Accordingly, we deny Lona's petition for review as to her motion for reconsideration under 8 U.S.C. § 1229a(c)(6).

**B**

We next address Lona's contention that the BIA's dismissal of her appeal was premised on or amounts to "legal or constitutional error" under *Bonilla*.

Before *Bonilla*, the rule we observed—despite the general "presumption favoring . . . judicial review of administrative action," *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (citation omitted)—was that we have no jurisdiction to review the BIA's sua sponte authority under 8 C.F.R. § 1003.2(a). *See Ekimian*, 303 F.3d at 1159 ("[T]he decision of the BIA whether to invoke its sua sponte authority is committed to its unfettered discretion . . . [and is] not subject to judicial review.") (emphasis omitted) (quoting *Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999)). This rule was rooted in "the 'truly exceptional situations' locution" the BIA adopted for exercising its discretion to reconsider or reopen on its own motion. *Bonilla*, 840 F.3d at 585 (quoting *In re G–D–*, 22 I. & N. Dec. at 1134). We explained that "the breadth and generality" of this benchmark "provides no judicially manageable standard with which to" review the BIA's exercise of discretion. *Id.* at 585–86 (citation omitted). We held that because there is no "law to apply,"

*id.* at 586, "it is impossible to evaluate agency action for 'abuse of discretion.'" *Ekimian*, 303 F.3d at 1158 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

In *Bonilla*, we carved out a narrow exception to this jurisdictional bar.  The BIA had denied Bonilla's untimely motion for reopening not on its merits, but rather because the agency "believed, incorrectly, that Bonilla had lost his lawful permanent resident status when he was deported and, even if reopening were granted," he would not regain his status to become eligible for certain relief.  840 F.3d at 589. On appeal, we held that, as a matter of law, granting the motion would vacate the final deportation order that caused Bonilla to lose his lawful permanent resident status, such that the reopening would not be futile.  *Id.* at 589–90.  In other words, the "legal backdrop" against which the BIA initially assessed the exceptionality of Bonilla's situation was flawed, with the result that the agency had not truly exercised its discretion.  *Id.* at 579.  Because there was "law to apply" in this situation, we held that we had limited jurisdiction to recognize the BIA's reliance "on an incorrect legal premise" and to remand for the agency to "exercise its authority against the correct legal background."  *Id.* at 588–89 (internal quotation marks and citations omitted).

Our opinion in *Bonilla* built on our opinion in *Singh v. Holder*, 771 F.3d 647 (9th Cir. 2014), where we found "legal error" in the BIA's denial of Singh's untimely motion to reopen because it was based on the BIA's incorrect belief that "it lacked authority to reopen his exclusion proceedings" on its own motion.[8]  *Id.* at 650.  In both cases, we held that

---

[8] This incorrect belief was rooted in the BIA's reliance on *In re Yauri*, 25 I. & N. Dec. 103 (BIA 2009), an inapposite case in which the BIA erroneously interpreted Yauri's untimely motion to reopen and

the BIA's denials of sua sponte relief were not "exercises" of its unfettered discretion under 8 C.F.R. § 1003.2(a) because they were premised on legal error. *Bonilla*, 840 F.3d at 579, 592; *see Singh*, 771 F.3d at 650 ("Where, as here, the BIA concludes that it lacks the *authority* to reopen, rather than denying a motion to reopen as an exercise of discretion, we hold that *Ekimian* does not preclude our jurisdiction.").[9] In *Bonilla*, we held that "[i]f, on remand, the Board again declines to exercise its *sua sponte* authority to reopen, and does so without relying on a constitutionally or legally erroneous premise, its decision will not be reviewable." 840 F.3d at 592.

Here, we see no "incorrect legal premise" in the BIA's decision to deny sua sponte relief. The BIA clearly articulated the "truly exceptional situations" standard for its exercise of discretion under 8 C.F.R. § 1003.2(a). It cited *In re G–D–*, 22 I. & N. Dec. 1132—under which a "fundamental change in the law" qualifies as an "exceptional situation" for which sua sponte action may be appropriate,

---

continue her removal proceedings as a request for a stay of removal so that she could pursue an application for adjustment of status before the United States Citizenship and Immigration Services—a request the BIA had no authority to grant. *Singh*, 771 F.3d at 651. We held that "the Board's denial of Singh's motion to reopen [in reliance on *Yauri*] on jurisdictional grounds was legal error" and remanded "to the BIA for an exercise of the agency's discretion." *Id.* at 653.

[9] *See also Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Security*, 908 F.3d 476, 497 (9th Cir. 2018) ("[W]here the agency's decision is based not on an exercise of discretion, but instead on a belief that any alternative choice was foreclosed by law, the APA's 'committed to agency discretion' bar to reviewability, 5 U.S.C. § 701(a)(2), does not apply."), *cert. granted sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, No. 18-587, 139 S. Ct. 2779 (mem.) (2019), *argued* Nov. 12, 2019.

*id.* at 1135—and acknowledged Lona's argument that *Lopez-Valencia* "fundamentally changed the law" by invalidating the aggravated-felony status of her petty theft conviction. It then noted three factors weighing against a finding of exceptional circumstances in her case: (1) Lona's failure "to raise arguments similar to the ones accepted in *Lopez-Valencia*" despite "a full and fair opportunity" to do so; (2) Lona's waiver of appeal; and (3) her actual removal. Finally, the BIA concluded that Lona's "case is final and does not warrant reconsideration," demonstrating that the agency clearly understood the discretionary nature of its decision.

Lona argues that the BIA's decision was incorrectly premised on the finality of her case, her appeal waiver, and her removal to Mexico, and that none of these deprived the BIA of its authority to grant sua sponte relief. She notes that in *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102 (9th Cir. 2006), we reaffirmed that an alien who files a timely motion to reopen removal proceedings may be entitled to reopening, even post-removal, if his state conviction is vacated and that conviction formed a "key part of his removal proceedings."[10] *Id.* at 1106–07 (citing *Wiedersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990); *Estrada-Rosales v. INS*, 645 F.2d 819 (9th Cir. 1981)). Indeed, like the Fifth Circuit, we have held the regulatory departure bar—prohibiting post-departure motions to reconsider or reopen subsequent to the

---

[10] Lona also cites *In re L–V–K–*, 22 I. & N. Dec. 976 (BIA 1999), arguing that there the BIA granted a motion to remand for adjustment of status "despite the fact that the movant had previously waived appeal of her case." Lona is mistaken. Rather, the BIA found that it lacked jurisdiction to consider a motion for adjustment of status where the movant waived appeal, "her deportation proceedings were never reopened[,] and the motion to remand was not timely filed following the [IJ's] final administrative order." *Id.* at 980.

movant's departure from the United States—to be invalid and to pose no limitations on an alien's ability to seek reconsideration or reopening or the BIA's authority to grant such relief. *Toor v. Lynch*, 789 F.3d 1055, 1060 (9th Cir. 2015); *see also Reyes-Torres v. Holder*, 645 F.3d 1073 (9th Cir. 2011); *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010).

But the BIA's decision here evinces no misunderstanding about its unfettered discretion under 8 C.F.R. § 1003.2(a). Furthermore, the BIA's interest in finality, Lona's appeal waiver, and her removal are not irrelevant.[11] The agency found that Lona's appeal waiver and removal supported its conclusion that her situation is not "exceptional" and, therefore, her case "does not *warrant* reconsideration." It did not state that it lacked the authority to grant reconsideration or to consider the merits of her motion based on these factors. The scope of our review under *Bonilla* is limited to those situations where it is obvious that the agency has denied sua sponte relief not as a matter of discretion, but because it erroneously believed that the law forbade it from exercising its discretion, *see Singh*, 771 F.3d at 650, or that exercising its discretion would be futile, *see Bonilla*, 840 F.3d at 588–89. In other words, our review under *Bonilla* is constricted to legal or constitutional error that is apparent on the face of the BIA's decision and

---

**11** *See Muyubisnay-Cungachi v. Holder*, 734 F.3d 66, 71 (1st Cir. 2013) ("As a general rule, motions to reopen removal hearings are disfavored as contrary to 'the compelling public interests in finality and the expeditious processing of proceedings.'") (citation omitted); *Villatoro-Ochoa v. Lynch*, 844 F.3d 993, 994 (8th Cir. 2017) (noting that motions to reopen are "disfavored because they undermine the government's legitimate interest in finality, which is heightened in removal proceedings" (internal quotation marks and citation omitted)).

does not extend to speculating whether the BIA *might* have misunderstood some aspect of its discretion.

Because we hold that the BIA's decision was free of "legal or constitutional error," we need not decide whether *Lopez-Valencia* fundamentally changed the law. However, even if *Lopez-Valencia* was a fundamental change, it does not follow that the BIA committed legal or constitutional error in denying Lona relief. "[T]he Board is not *required* . . . to reopen proceedings *sua sponte* in exceptional situations," *id.* at 585 (citing *Ekimian*, 303 F.3d at 1158), even those involving "a 'fundamental change in the law'" *id.* (quoting *In re G–D–*, 22 I. & N. at 1135). Instead, as the Eighth Circuit has noted:

> [t]he governing regulation, 8 C.F.R. § 1003.2(a), still grants the Board unfettered discretion to reopen *sua sponte* as it sees fit. The Board's recognition of a "fundamental change in the law" in a particular case is simply a means of describing when the Board has decided that a certain intervening development constitutes an "exceptional situation" warranting an exercise of its discretion to reopen. A finding of "fundamental change" is thus an expression of discretion; it is not the sort of "legal premise" that concerned the courts in [*Bonilla*,] *Pllumi* and *Mahmood*.[12]

---

[12] *See Pllumi*, 642 F.3d at 160 ("[W]hen presented with a BIA decision rejecting a motion for *sua sponte* reopening, we may exercise jurisdiction to the limited extent of recognizing when the BIA has relied on an incorrect legal premise."); *Mahmood v. Holder*, 570 F.3d 466, 469

*Barajas-Salinas v. Holder*, 760 F.3d 905, 908 (8th Cir. 2014); *see also Sang Goo Park*, 846 F.3d at 650 ("[T]he presence of an exceptional situation does not compel [the BIA] to act; the BIA may still decide against reopening.").

In short, unlike in *Bonilla* and *Singh*, the BIA's denial of Lona's motion to reconsider was untainted by legal or constitutional error. Because the BIA's decision evinces no misunderstanding of the agency's broad discretion to grant or deny sua sponte relief—that is, the BIA "exercise[d] its authority against the correct legal background"—there is nothing left for us to review. *Bonilla*, 840 F.3d at 588, 592.

## C

Finally, we reject Lona's argument that the BIA's "arbitrary and capricious decision is not entitled to deference because it is contrary to its previous decisions" and its precedent holding "that a fundamental change in the law is an exceptional circumstance which warrants *sua sponte* reopening."

We view this as a tacit invocation of the Third Circuit's "settled course of adjudication" doctrine, which we alluded to, but did not adopt, in *Menendez-Gonzalez*. In that case, we concluded that we lacked jurisdiction to review the BIA's denial of Menendez-Gonzalez's untimely motion to reopen based on the vacatur of his underlying conviction, even though he presented some evidence (ten unpublished cases) of the BIA's practice of granting sua sponte reopening in

(2d Cir. 2009) ("[W]here the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail, remand to the Agency for reconsideration in view of the correct law is appropriate.").

similar circumstances. *Menendez-Gonzalez*, 929 F.3d at 1117–19. We held that Menendez-Gonzalez did "not establish a 'settled pattern of adjudication' or provide us with any meaningful standard to apply to limit the agency's exercise of discretion"; nor did he establish "any 'incorrect legal premise' in the BIA's decision not to reopen *sua sponte* where [he] waited years before moving to reopen." *Id.* at 1118–19 (quoting *Bonilla*, 840 F.3d at 588). Nevertheless, we mused that "the BIA's departure from an established policy, set 'by rule or by settled course of adjudication,' *could* amount to a legal or constitutional error" under *Bonilla*. *Id.* at 1118 (emphasis added) (citation omitted). We commented, however, that "the existence of a 'settled course' cannot be lightly inferred," and that "[t]he question is whether the agency has acted to constrain its otherwise unfettered discretion."**[13]** *Id.*

We note that the Supreme Court case upon which the Third Circuit based its adoption of "settled course" review, *INS v. Yueh-Shaio Yang*, 519 U.S. 26 (1996), did not address the BIA's sua sponte authority to reopen or reconsider under 8 C.F.R. § 1003.2(a), or the jurisdiction of the Courts of Appeals to review the agency's exercise of that authority. Far from it: the Supreme Court specifically stated that "jurisdiction over this matter [the granting of waivers of deportation under 8 U.S.C. § 1251(a)(1)(H)] is not in

---

**[13]** Since deciding *Menendez-Gonzalez*, we have engaged in "settled course" review of the BIA's sua sponte authority in at least three unpublished cases, denying the petition for review in each instance. *See Chavez-Mier v. Barr*, 773 F. App'x 960 (9th Cir. 2019); *Sanchez-Miranda v. Barr*, 782 F. App'x 544 (9th Cir. 2019); *Meza-Diveni v. Barr*, 773 F. App'x 412 (9th Cir. 2019). Of course, the denial of relief under the "settled course" exception is not necessarily an affirmation of that standard of judicial review.

question."**14** *Id.* at 29 n.1 (citing 5 U.S.C. § 702). Instead, *Yueh-Shaio Yang* concerned the *scope* of the Attorney General's authority to grant such waivers—specifically, whether the Attorney General was authorized under the statute to "take into account acts of fraud committed by the alien in connection with his entry into the United States" despite the INS's "settled policy" of not doing so. 519 U.S. at 27, 30–31. The Supreme Court reversed, not because the Attorney General had deviated from "settled policy," but rather the opposite: the Court held that that the Attorney General's "unfettered discretion" was *not* cabined by the agency's settled policy, and therefore our contrary conclusion was erroneous. *Id.* at 31–32. Thus, the holding in *Yueh-Shaio Yang* is directly at odds with the Third Circuit's "settled course" approach.

The Supreme Court did note that an agency's past practice is not "irrelevant," and that an agency could, "by rule or by settled course of adjudication," adopt "a general policy by which its exercise of discretion will be governed, [such that] an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'" *Id.* at 32 (alteration in original) (citing 5 U.S.C. § 706(2)(A)). But *Yueh-Shaio Yang* did not state or imply that an agency's deviation from its past practice in a particular case is, by default, irrational or improper; or that agencies must provide special justification whenever they

---

**14** The Court noted that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRA), which stripped courts of jurisdiction to review any "decision or action of the Attorney General the authority for which is specified under [Title 8 U.S.C.] to be in the discretion of the Attorney General," was not yet in effect. 519 U.S. at 29 n.1 (alteration in original).

exercise their discretion in an apparently inconsistent manner.  Furthermore, contrary to the Third Circuit, we do not read *Yueh-Shaio Yang* as stating or implying that "settled course" review could be available in the context of agency actions that are "committed to agency discretion by law and, therefore, unreviewable."  *Mejia-Hernandez*, 633 F.3d at 823–24 (citing *Ekimian*, 303 F.3d at 1159).

More fundamentally, we conclude that "settled course" review is incompatible with the general rule, reaffirmed in *Bonilla*, that we lack jurisdiction to review claims "that the BIA *should have* exercised its *sua sponte* power" in a given case.[15]  *Ekimian*, 303 F.3d at 1159 (emphasis added).  The general rule applies in all cases, even those in which the petitioner presents evidence, as Lona has, that the BIA has granted sua sponte relief in similar circumstances in the past, such as where there has been a fundamental change in the law.[16]  Because the jurisdictional bar still applies, we have

---

[15] *See Bonilla*, 840 F.3d at 586 n.7 (collecting fifteen published opinions where we relied on or approvingly cited *Ekimian*'s holding that "the 'exceptional situation' benchmark does not provide a sufficiently meaningful standard to permit judicial review" and noting that *Ekimian* "remains good law").

[16] Lona cited three unpublished BIA decisions which, she claims, demonstrate the BIA's settled policy that "a fundamental change in law warrants *sua sponte* reopening."  *See In re Benigno Longoria-Ramos*, No. AXX-XX5-773, 2007 WL 2299627 (BIA July 28, 2007) (granting sua sponte reconsideration and terminating removal proceedings based on the movant's "exceptional situation," after the Fifth Circuit held that a conviction under Texas' assault statute is not an aggravated felony for purposes of removal); *In re Francis Okogwu*, No. AXX-XX6-621, 2007 WL 2074435 (BIA Jun. 13, 2007) (finding "an exceptional situation exists due to a change in the law" and ordering sua sponte reopening after the sole basis for removal was invalidated by a Supreme Court decision issued one year after filing of the removal order); *In re Angel Bringas*,

no authority to consider the consistency of the BIA's decisions, or to even *begin* comparing the circumstances of the present case against the circumstances in past cases where sua sponte relief was granted.

The Third Circuit, however, suggests that the "evaluation of the authorities marshaled by the petitioner logically precedes, rather than follows, a finding of jurisdiction to conduct abuse-of-discretion review— although we can of course refer to the BIA's decision from which the petition arises to determine whether it fits into the pattern alleged by the petitioner." *Sang Goo Park*, 846 F.3d at 653. In our opinion, "settled course" review *is* abuse-of-discretion review, regardless of when undertaken. It asks that we evaluate the BIA's exercise of its sua sponte authority in a given case against its decisions in past cases to consider whether the BIA may have "irrationally departed from its settled practice." *Menendez-Gonzalez*, 929 F.3d at 1117. But this is precisely what *Ekimian* prohibits: our weighing *the wisdom* of the BIA's decision in any given case. Nothing in *Bonilla* undermined or amended that general prohibition.[17]

No other Court of Appeals has joined the Third Circuit in recognizing a "'settled course' exception in the context of

---

No. AXX-XX8-709, 2004 WL 1398720 (BIA Apr. 14, 2004) (granting sua sponte reopening after the Ninth Circuit held that a state conviction for possession of methamphetamine is not an aggravated felony for immigration purposes, invalidating the basis for removal).

[17] *Cf. Falcon Carriche v. Ashcroft*, 350 F.3d 845, 854 n.8 (9th Cir. 2003) ("Framing the question in this manner does not avoid the jurisdictional bar because this approach, like a direct challenge on the merits, requires a merits analysis. Calling it something else does not change the legal character of the challenge.").

*sua sponte* reopening." *Sang Goo Park*, 846 F.3d at 653 n.35. To the extent we suggested that we might do so in *Menendez-Gonzalez*, we walk back that suggestion now. Short of the BIA adopting an explicit rule that it will apply in *every* case, our review of the BIA's unfettered discretion to reconsider or reopen on its own motion is limited to instances where the agency misconstrues the parameters of its sua sponte authority based on legal or constitutional error and, as a consequence, does not truly exercise its discretion. *See Bonilla*, 840 F.3d at 588–89. The Eighth Circuit has similarly rejected "settled course" review as incompatible with its own precedent that the BIA is not *required* to grant sua sponte relief in a given case, even in cases involving "exceptional situations." *Tamenut v. Mukasey*, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc) (per curiam).

We further note that adoption of the Third Circuit's "settled course" approach would conflict with the general principle that there is no "theory of partial reviewability" for actions committed to agency discretion. *Schilling v. Rogers*, 363 U.S. 666, 674–75 (1960); *see Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2605 (2019) (Alito, J., concurring in part and dissenting in part) ("[W]hen an action 'is committed to agency discretion by law,' the Judiciary has no role to play, even when an agency sets forth 'an eminently reviewable proposition.'" (quoting *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282–83 (1987) (rejecting the proposition that "if [an] agency gives a 'reviewable' reason for [an] otherwise unreviewable action, the action becomes reviewable"))). Citing this general principle, the Eighth Circuit recently declined to adopt an "incorrect legal premise" exception similar to the one we adopted in *Bonilla*, in a case in which the petitioner, like Lona, sought review of the BIA's denial of sua sponte relief based on a "fundamental change in the law." *See Chong Toua Vue v.*

*Barr*, 953 F.3d 1054, 1056–57 & n.2 (8th Cir. 2020) (citing *Bhd. of Locomotive Eng'rs*, 482 U.S. at 282–83) ("As the Supreme Court has made clear, when the law commits certain actions to agency discretion, we cannot pick and choose what to review depending on the particulars of each case.").

In sum, our review for legal or constitutional error under *Bonilla* does not encompass alleged inconsistencies between the BIA's grants or denials of discretionary relief. Rather, we look to whether the particular decision at issue involved legal error, as the Supreme Court held in *Yueh-Shaio Yang*. Here, because Lona's assertion that the BIA's denial of sua sponte relief is inconsistent with its decisions in other cases does not present an issue of legal or constitutional error, we deny her petition for review.

## CONCLUSION

As we observed in *Bonilla*: "Immigration law changes over time. New statutes are enacted; agency interpretations change; new appellate and Supreme Court decisions issue." 840 F.3d at 578. Not every circumstance involving a change in the law that occurs after an individual's departure from the United States warrants reconsideration of the individual's final removal order or reopening of removal proceedings. The BIA is empowered to determine on a case-by-case basis whether the circumstances are exceptional such that the agency's exercise of sua sponte authority is warranted. We decline to adopt an approach that would invite us to consider—and, inevitably, to second-guess—the BIA's case-by-case determination of when to grant sua sponte relief.

The BIA determined Lona's case to be unexceptional and not entitled to sua sponte reconsideration. We cannot, by law, disagree.

**THE PETITION FOR REVIEW IS DENIED.**