**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE EDUINO ASSUMPCAO GOULART, *Petitioner*, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 19-72007 <br><br> Agency No. A030-516-243 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 16, 2021
Pasadena, California

Filed November 18, 2021

Before: Richard A. Paez and Lawrence VanDyke, Circuit
Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Paez;
Concurrence by Judge VanDyke;
Dissent by Judge Korman

---

[*] The Honorable Edward R. Korman, United States District Judge
for the Eastern District of New York, sitting by designation.

## SUMMARY**

### Immigration

In a case in which Jose Eduino Assumpcao Goulart moved the Board of Immigration Appeals to reconsider his prior order of removal based on a change in law, the panel held that the BIA did not abuse its discretion in denying Goulart's claim for equitable tolling of the 30-day motions deadline.

Goulart was removed in 2013, after the BIA determined that his conviction was a crime of violence under 18 U.S.C. § 16(b). In 2015, this court held that § 16(b) was unconstitutionally vague and, in April 2018, the Supreme Court affirmed in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Goulart learned of the latter ruling on June 9, 2018, when he was so informed by his former defense attorney, and filed his motion for reconsideration on July 16, 2018.

In *Lona v. Barr*, 958 F.3d 1225 (9th Cir. 2020), this court held that the BIA did not abuse its discretion in denying equitable tolling, reasoning that the petitioner alleged no facts suggesting a diligent pursuit of her rights in the years between her removal and the change in law relevant to her case. Here, the panel explained that Goulart likewise failed to present any evidence suggesting that he diligently pursued his rights during the time between his removal in 2013 and when he learned of *Sessions v. Dimaya* in 2018. The panel further explained that Goulart did not support his motion with a declaration or any other evidence concerning his

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

actions between 2013 and June 2018; thus, even assuming that he was unaware of this court's 2015 decision, the BIA did not act arbitrarily or irrationally in determining that Goulart failed to make reasonable efforts to pursue relief.

Concurring in the judgment, Judge VanDyke wrote separately to emphasize his view that the dissent misconstrued the due diligence standard and put forth a warped interpretation of *Lona*. Judge VanDyke wrote that a central flaw of the dissent was inappropriately assessing due diligence based on actual knowledge of the change in the law—a standard clearly contradicted by the reasoning in *Lona*. Judge VanDyke also wrote that, under the dissent's analysis, a petitioner could seek reconsideration at a very late date and still satisfy due diligence by submitting an affidavit stating he was unaware of prior precedent. Judge VanDyke also wrote that the cases cited by the dissent did not support the conclusion that due diligence or equitable tolling could depend on actual knowledge and that, even using principles imported from other legal contexts (such as habeas cases), Goulart failed to satisfy the standard for equitable tolling.

Judge VanDyke also wrote that one wonders: Why would one champion charting a completely new and unsupported path of legal reasoning just to avoid the lawful removal of a convicted burglar? Judge VanDyke wrote that in our system of government that means respecting the laws passed by Congress, not bending them—including our nation's immigration laws.

Dissenting, Judge Korman concluded that principles of law and equity required that Goulart be permitted to move for reconsideration, explaining that the Supreme Court held that the precise statute under which Goulart was deported violated the Constitution. Judge Korman observed that, under Judge Paez's view, even if Goulart was unaware of

this court's 2015 decision, the BIA reasonably concluded that he failed to make reasonable efforts to pursue relief. However, the BIA did not base its decision on Goulart's failure to present evidence that he was unaware of the 2015 decision; rather, the clear implication was that he was not aware of that decision. Judge Korman contrasted this to *Lona*, explaining that language in that case suggested that if Lona had alleged that she was unaware of the court's prior ruling, she could have secured relief.

With respect to Judge VanDyke's argument that actual knowledge was irrelevant, Judge Korman wrote that the Supreme Court has held that due diligence is demonstrated by a petitioner's prompt action as soon as he is in a position to realize that he has an interest in challenging an adverse decision. Judge Korman also observed that the BIA's decision in *In re: Sergio Lugo-Resendez*, 2017 WL 8787197 (B.I.A. Dec. 28, 2017), made clear that a deported immigrant acts with reasonable diligence so long as he acts promptly once he learns of a relevant change in law. Judge Korman concluded that Goulart met that standard.

Responding to the question why he would "champion" the cause of a convicted burglar, Judge Korman pointed to the judicial oath, which was adopted in the Judiciary Act of 1789, and requires judges to "administer justice without respect to persons, and do equal right to the poor and to the rich." Judge Korman further wrote that the panel was not called to decide whether Goulart is a good person, but rather whether a person who has been banished from the United States without legal justification should be permitted to seek to return.

**COUNSEL**

Matthew H. Springmeyer (argued), Law Office of Matthew H. Springmeyer, San Diego, California, for Petitioner.

Andrew B. Insenga (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

PAEZ, Circuit Judge:

Petitioner Jose Eduino Assumpcao Goulart, a native and citizen of Brazil, petitions for review of the Board of Immigration Appeal's ("BIA") decision denying his motion for reconsideration. Specifically, Goulart argues that the BIA erred in concluding that the motion was untimely and denying equitable tolling. We have jurisdiction under 8 U.S.C. § 1252. *See Mata v. Lynch*, 576 U.S. 143, 147-48 (2015). Because the BIA did not abuse its discretion, *Lona v. Barr*, 958 F.3d 1225, 1229 (9th Cir. 2020), we deny Goulart's petition.

"A motion to reconsider a final order of removal generally must be filed within thirty days of the date of entry of the order." *Id.* at 1230 (citing 8 U.S.C. § 1229a(c)(6)(B)). The filing deadline is subject to equitable tolling "when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Id.* (quoting *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003)); *see Bonilla v. Lynch*, 840 F.3d 575, 582 (9th Cir.

2016) (describing the three factors considered when "determin[ing] whether a petitioner exercised due diligence"). Tolling is available "in cases where the petitioner seeks excusal from untimeliness based on a change in the law that invalidates the original basis for removal." *Lona*, 958 F.3d at 1230. In *Lona*, the petitioner argued that she was entitled to equitable tolling because she filed her motion for reconsideration as soon as she discovered new case law making her eligible for relief. *Id.* at 1228-29. We held that the BIA did not abuse its discretion in denying equitable tolling because the petitioner "alleged no facts . . . suggesting a diligent pursuit of her rights in the intervening years between her removal" and the relevant change in law. *Id.* at 1232.

Like the petitioner in *Lona*, Goulart failed to present any evidence suggesting that he diligently pursued relief during the years between his removal and the relevant change in law. Goulart was removed in 2013, after the BIA determined that his prior conviction was a crime of violence under 18 U.S.C. § 16(b). Two years later, we held that 18 U.S.C. § 16(b) was unconstitutionally vague and thus potentially invalidated the basis for Goulart's order of removal. *See Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015). The Supreme Court affirmed our decision in April 2018. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018). Goulart learned of the Supreme Court's ruling on June 9, 2018, when he was so informed by his former defense attorney, and first filed his motion for reconsideration on July 16, 2018.

In his motion, Goulart failed to present any evidence suggesting that he diligently pursued his rights during the time between 2013, when he was removed, and 2018, when he learned of *Sessions v. Dimaya* and filed the motion to reconsider. *See Lona*, 958 F.3d at 1232; *Bonilla*, 840 F.3d

at 583 (holding that the BIA did not abuse its discretion in denying equitable tolling when there was a six-year gap in the petitioner's pursuit of legal advice).　Goulart did not support his motion with a declaration or any other evidence concerning his actions between 2013 and June 2018; thus, even assuming that Goulart was unaware of our 2015 decision, the BIA did not act arbitrarily or irrationally in determining that Goulart failed to "ma[ke] reasonable efforts to pursue relief." *Bonilla*, 840 F.3d at 583 (citation omitted). Therefore, there is no basis to conclude that the BIA abused its discretion in denying Goulart's claim for equitable tolling.　*Lona*, 958 F.3d at 1232 (citation omitted).[1]

**PETITION FOR REVIEW DENIED.**

---

VANDYKE, Circuit Judge, concurring in the judgment:

There's a guy, let's call him "John."　Due to some poor personal choices, John is broke and looking for a quick way to get cash.　He thinks about his wealthy, older aunt who lives alone and decides that taking some of her money is the solution (she has more than she needs anyway, he justifies to himself).　He debates whether to break into her house during the day while she is gone volunteering at a homeless shelter

---

[1] Goulart also argues that our 2015 holding in *Dimaya* was not settled law until the Supreme Court affirmed in 2018.　That argument is meritless because the BIA is generally bound by our precedent in cases arising from this circuit.　*See Matter of Anselmo*, 20 I. & N. Dec. 25, 31-32 (B.I.A. 1989).　Moreover, the BIA repeatedly applied *Dimaya v. Lynch* between 2015 and 2018.　*See, e.g.*, *Matter of Kim*, 26 I. & N. Dec. 912, 914 n.1 (B.I.A. 2017) (explaining that the BIA addressed only 18 U.S.C. § 16(a) because *Dimaya v. Lynch* "deemed § 16(b) to be unconstitutionally vague" and noting that certiorari had been granted).

or whether to break in at night while she sleeps. Concerned that her neighbors will see him break in during the day, John decides to break in at night. What John doesn't know is that just last week, the legislature passed a law increasing the prison sentence for burglary by 10 additional years if a house is occupied when the burglar breaks in. The new law captured lots of media attention, but John, being low on money, had cut off his internet and cable access. As a result, John didn't know about this new law.

John breaks into his aunt's house in the middle of the night while she's sleeping and steals cash, jewelry, and a number of expensive electronics. When he predictably gets caught for the burglary, he learns for the first time that he will face another decade in prison because he opted to burgle his aunt's house while she was at home. John protests, arguing that he was unaware of the new law. He submits an affidavit to that effect and provides final notices from the internet and cable companies indicating when they shut off service to his apartment, so he had no way to know about the law. Should a judge decide not to impose the increased sentence because John didn't know about the change in the law? Of course not. As a general rule, we treat people as if they have constructive notice of any change in the law; actual ignorance of the law is no defense. Nor should it be used as a sword, like our dissenting colleague seems inclined to promote here.

Judge Korman's dissent would have us adopt an actual knowledge standard for determining whether Petitioner Jose Eduino Assumpcao Goulart, also a convicted burglar of an inhabited dwelling, is eligible for reconsideration of his immigration proceedings. This case only requires a straightforward application of our decision in *Lona v. Barr*, 958 F.3d 1225 (9th Cir. 2020), and as in *Lona*, I would deny

the petition for review. I write separately to emphasize that the dissent misconstrues the due diligence standard to establish eligibility for equitable tolling and puts forth a warped interpretation of *Lona*.

As Judge Paez's opinion correctly identifies, we review the denial of a motion for reconsideration for abuse of discretion. *Lona*, 958 F.3d at 1229. But before we dive into the BIA's analysis, I think it is helpful to take a step back and summarize how Goulart arrived at the BIA. After his conviction of burglary of an inhabited dwelling, Goulart was placed in removal proceedings, and ultimately removed from the United States in 2013. Approximately five years after his removal, Goulart moved for reconsideration, arguing that a 2018 Supreme Court decision, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), rendered his conviction no longer a "crime of violence" aggravated felony and therefore invalidated the legal basis for his removal. Because Goulart filed such a motion more than six years after the BIA's decision—clearly beyond the thirty-day deadline for motions to reconsider, *see* 8 U.S.C. § 1229a(c)(6)(B)—he needed to establish that he was entitled to equitable tolling of that deadline. He asserted that tolling was appropriate because he filed his "motion after discovering that he is not deportable," which was "as soon as practicable after finding out about the [Supreme Court] decision."

The BIA determined he was not entitled to equitable tolling because the "change" in the law identified by Goulart in the Supreme Court's 2018 *Sessions* decision had, in fact, already occurred in 2015 when the Ninth Circuit reached the same result. The BIA therefore concluded that Goulart failed to demonstrate reasonable diligence by filing his motion for reconsideration three years later in 2018. *Lona* is dispositive on this issue. Understanding how the dissent

deviates from *Lona* requires a more in-depth look at *Lona* itself and its obvious similarities to this case.

In *Lona*, after her conviction of second-degree burglary, Lona was placed in removal proceedings and ultimately removed from the United States in April 2013. 958 F.3d at 1228. Several years after her removal, Lona moved for reconsideration, arguing that a Ninth Circuit opinion issued in 2015 rendered her conviction no longer an aggravated felony and therefore invalidated the legal basis for her removal. *See id.* She asserted that she was entitled to equitable tolling of the thirty-day deadline for reconsideration "because she filed her motion *as soon as she discovered* her eligibility for termination of removal proceedings," *id.* at 1229 (emphasis added), which was "as soon as practicable" after the Ninth Circuit's 2015 decision came down. *Id.* at 1230. Sound familiar?

But Lona's motion suffered some fatal flaws. The *Lona* court reasoned that Lona "alleged no facts . . . suggesting a diligent pursuit of her rights in the intervening years between her removal and [the Ninth Circuit's 2015 decision]" that caused her to seek reconsideration. *Id.* at 1232. But the analysis in *Lona* did not end there. The *Lona* court also found persuasive that Lona had not "shown that some *extraordinary circumstance* stood in her way and prevented timely filing of her motion based on [earlier Supreme Court and Ninth Circuit decisions]" that the Ninth Circuit's 2015 opinion "plainly followed." *Id.* (emphasis added) (citation, internal quotation marks, and internal alteration marks omitted). The court explained that "our holding in [the Ninth Circuit's 2015 opinion] adhered to the methodology established by" those earlier Supreme Court and Ninth Circuit decisions, and the 2015 opinion was thus "an application of existing law . . . that we characterized as not

complicated." *Id.* (citation, internal quotation marks, and internal alteration marks omitted).[1]

In this case, Goulart's motion embodies the same defects. Goulart relies on the Supreme Court's holding in *Sessions* that the statutory definition of "crime of violence" is unconstitutionally vague. *Sessions*, 138 S. Ct. at 1210. But as noted above, that decision affirmed the Ninth Circuit's 2015 decision in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), where our court reached the same conclusion. *Sessions*, 138 S. Ct. at 1223; *see also Dimaya*, 803 F.3d at 1120. Goulart, like Lona, has provided no evidence that he diligently pursued his rights between his removal and the Supreme Court's 2018 *Sessions* opinion, but *neither has he shown* that some extraordinary circumstance stood in his way and prevented timely filing of his motion based on the Ninth Circuit's *Dimaya* decision, with which the Supreme Court agreed in *Sessions*.

Herein lies the central flaw of the dissent, which concludes that Goulart diligently pursued his rights "by filing his motion less than two months after he *learned* about the Supreme Court's . . . decision." But the dissent inappropriately assesses due diligence based on when Goulart gained actual knowledge of the change in the law—

---

[1] This reasoning refutes the dissent's implication that *Lona* faulted the petitioner for failing to seek reconsideration after the earlier Supreme Court case because it was precedent *from the Supreme Court*. As explained above, the *Lona* court faulted the petitioner for failing to seek reconsideration based on the first decision that could have provided relief—given that the Ninth Circuit's 2015 decision "plainly followed" prior precedent—not because that first decision was issued by the Supreme Court in particular. *See Lona*, 958 F.3d at 1232.

a standard that is clearly contradicted by the reasoning in *Lona*.

The *Lona* court rejected petitioner's knowledge-based argument that she was entitled to equitable tolling because she filed her motion "as soon as she discovered her eligibility for termination of removal proceedings" based on the Ninth Circuit's 2015 decision. *Lona*, 958 F.3d at 1228–29. Instead of looking to Lona's knowledge of case law and when she discovered it as the basis for the diligence inquiry, the court considered whether she exercised "due diligence in *discovering* and raising the error," *id.* at 1231 (emphasis added), highlighting "the lack of evidence that Lona took *any action* prior to our [2015 decision]." *Id.* at 1232 (emphasis added). Just like Lona, Goulart fails to establish that he diligently pursued his rights in this case—not because he failed to present evidence establishing that he "was unaware of our 2015 decision," but because he failed to provide evidence that he took any action to discover and raise the error identified in our 2015 *Dimaya* decision.

Not only does the dissent plainly contradict *Lona*, but under its analysis, a petitioner could seek reconsideration of his immigration proceedings at a very late date and still satisfy his due diligence requirements for equitable tolling by simply submitting an affidavit to the BIA stating he was unaware of prior precedent. This holding would lead to the reopening of any magnitude of immigration proceedings well after the fact, which severely undermines the interest of finality in such proceedings. *Cf. INS v. Doherty*, 502 U.S. 314, 322–23 (1992) (in analyzing the regulation governing reopening and reconsideration, the Court explained that "[m]otions for reopening of immigration proceedings are disfavored . . . . This is especially true in a deportation proceeding, where, as a general matter, every delay works to

the advantage of the deportable alien who wishes merely to remain in the United States" (internal citation omitted)).

Furthermore, while the dissent strings together a series of assertions about due diligence and equitable tolling principles, none of the cited cases support the conclusion that due diligence or equitable tolling could depend on actual knowledge of a change in the law without some previous action on Goulart's part. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478 (2021) (discussing the sufficiency of a notice to appear and not once mentioning the standard for due diligence or equitable tolling).[2]   Of the cases quoted, the binding precedent most closely on point—*Avagyan v. Holder*, 646 F.3d 672 (9th Cir. 2011)—undermines the dissent's conclusion, because it directs courts to consider

---

[2] *See also Holland v. Florida*, 560 U.S. 631, 653 (2010) (concluding defendant demonstrated diligence by "wr[iting] his attorney numerous letters seeking crucial information and providing direction; . . . repeatedly contact[ing] the state courts, their clerks, and the Florida State Bar Association . . . . And, [finally,] . . . prepar[ing] his own habeas petition *pro se*" when he found out that his attorney failed to meet the AEDPA deadline); *Johnson v. United States*, 544 U.S. 295, 308 (2005) (assessing the "question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial *fact* of the vacatur," not a change in the law (emphasis added)); *Doe v. United States*, 853 F.3d 792, 794, 802 (5th Cir. 2017) (rejecting equitable tolling of Doe's Fifth Amendment claim based on the government accusing him of a crime during criminal proceedings in which he was not a defendant because the claim accrued "when Doe was 'named' as a criminal actor without being indicted," noting that even a mistaken belief that his claim had not accrued would not have warranted tolling); *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 285–86 (3d Cir. 2021) (interpreting when "the *factual* predicate of the claim[s] . . . could have been discovered through the exercise of due diligence" under 28 U.S.C. § 2244(d)(1)(D), not a change in law (emphasis added)); *Wilson v. Beard*, 426 F.3d 653, 659 (3d Cir. 2005) (same); *Starns v. Andrews*, 524 F.3d 612, 616 (5th Cir. 2008) (same).

"whether petitioner took reasonable steps to investigate . . . or . . . whether petitioner made reasonable efforts to pursue relief," *id.* at 679—neither of which Goulart did here. *See also id*. at 682 ("The question is, therefore, whether [petitioner] made reasonable efforts to pursue relief *until she learned of* counsel's ineffectiveness." (emphasis added)).

Looking at how this court has assessed a change in the law as the basis for unearthing a final judgment in other contexts is likewise unhelpful to the dissent. In the context of a Rule 60(b) motion to reopen habeas proceedings, we have explained that "a change in the law should not indefinitely render preexisting judgments subject to potential challenge. Rather, individuals seeking to have a new legal rule applied to their otherwise final case should petition the court for reconsideration *with a degree of promptness*." *Bynoe v. Baca*, 966 F.3d 972, 986 (9th Cir. 2020) (emphasis added) (quoting *Phelps v. Alameida*, 569 F.3d 1120, 1138 (9th Cir. 2009) (reasoning that such promptness "respects the strong public interest in timeliness and finality" (citation and internal quotation marks omitted))).

Because the dissent relies on cases interpreting due diligence and equitable tolling under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *see* 28 U.S.C. § 2244(d), it seems only appropriate to consider our court's case law in that area. In *Bryant v. Arizona Attorney General*, this court considered whether the petitioner was entitled to equitable tolling of AEDPA's statute of limitations because he did not have access to case law interpreting the statute. 499 F.3d 1056, 1057 (9th Cir. 2007). The court applied a two-part test—essentially the same one applicable here—assessing: (1) whether petitioner "has been pursuing his rights diligently, and (2) [whether] some extraordinary

circumstances stood in his way." *Id.* at 1061 (citation omitted). The court denied equitable tolling, *see id.*, reasoning that because petitioner was "unaware of" AEDPA's statute of limitations until August 2001—more than a year after the statute of limitations had expired—"the unavailability of case law interpreting [AEDPA's] statute of limitations during that time period could not have been the cause of [petitioner's] late-filed petition" in order to justify equitable tolling. *Id.* at 1060. Most importantly, the court did not grant equitable tolling based on what clearly seemed to be the cause of petitioner's untimely habeas petition—i.e., that petitioner had only learned of AEDPA's statute of limitations through the government's answer to his habeas petition more than two years *after* he had access to the statutory text. *See id.* at 1060–61. The court's lack of concern for *when* petitioner gained actual knowledge of AEDPA's statute of limitations as a basis for granting equitable tolling again undermines the rationale of the dissent.

In assessing the diligence prong, the *Bryant* court also found persuasive that petitioner "made no effort to seek relief" from the time his last petition for post-conviction relief in state court was denied until he filed a motion to recall the mandate in state court nearly four years after AEDPA went into effect. *Id.* at 1061. Judge Korman himself has previously denied equitable tolling in the AEDPA context for a lack of diligence where the petitioner "took *no* apparent action" on his case for over five years. *Matos v. Superintendent, Wash. Corr. Facility*, No. 13-CV-2326 (ERK)(CLP), 2014 WL 5587518, at *2 (E.D.N.Y. Nov. 3, 2014) (emphasis added). Here, there is no evidence that Goulart took *any* action in the nearly five years between his removal from the United States and his efforts to seek reconsideration. Goulart has thus failed to satisfy the

standard for equitable tolling, even using principles imported from other legal contexts.[3]

Finally, although the dissent hints that our conclusion today is driven, at least in part, by "the desire to remove convicted burglars from this country," it's not. It's motivated by a desire to follow the law and enforce the finality of legal decisions unless good cause exists to revisit them. Our decision follows a well-established path in that respect. But one wonders: Why would one champion charting a completely new and unsupported path of legal reasoning just to avoid the lawful removal of *a convicted burglar*? I agree with Judge Korman's laudable paean to doing equal justice. But in our system of government that means respecting the laws passed by Congress, not bending them—including our nation's immigration laws.

For all of the reasons set forth above, I respectfully concur in the judgment.

---

[3] The dissent excuses the applicability of such principles in this context, in part because many immigrants are "poor, uneducated, unskilled in the English language, and effectively unable to follow developments in the American legal system . . . ." But Goulart speaks English. Not only does he speak it, Goulart conversed with the IJ in English on multiple occasions, and the police department identified his English-speaking abilities as "good" on Goulart's inmate report. He did not require a translator when he entered his guilty plea for burglary. As for his ability to follow developments in the American legal system, Goulart was admitted to the United States as a lawful permanent resident at the age of seven in 1970—before I was born. Goulart is not the uninformed, helpless alien that the dissent suggests.

KORMAN, District Judge, dissenting:

Petitioner Jose Eduino Assumpcao Goulart, a lawful permanent resident of the United States since the age of seven, was deported to Brazil in 2013. Goulart had been convicted of burglary in California, which the Board of Immigration Appeals ("BIA") concluded was a crime of violence that rendered him deportable under Ninth Circuit precedent at the time. On April 17, 2018, five years after his removal, the Supreme Court held unconstitutional the federal statute upon which Goulart's deportation was justified. *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). The Supreme Court did so in a case involving the precise statute of which Goulart was convicted: first-degree burglary under California law. *Id.* at 1211. Thus, he could not be removed based on his burglary conviction.

On June 9, 2018, Goulart was told about that holding by his former criminal defense attorney. He retained immigration counsel, who first filed a reconsideration motion on July 16, 2018, only 90 days after the Supreme Court decided *Dimaya* and less than 2 months after Goulart learned of the decision. Nevertheless, the BIA held that, despite pursuing his reconsideration motion immediately upon learning of the Supreme Court's decision in *Dimaya*, Goulart failed to exercise due diligence because the Ninth Circuit reached the same conclusion three years earlier in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).

Under these circumstances, the BIA held that petitioner was not entitled to equitable tolling of the deadline for filing a motion for reconsideration that applies "in cases where the petitioner seeks excusal from untimeliness based on a change in the law that invalidates the original basis for removal." *Lona v. Barr*, 958 F.3d 1225, 1230 (9th Cir. 2020). Nevertheless, based on the record in that case, we

held that Lona was not entitled to equitable tolling. Indeed, the BIA decision denying Lona's motion to reconsider relied on the fact that she "had a full and fair opportunity to raise arguments similar to the ones" she raised on reconsideration, but that she had failed to make such arguments when she waived appeal "from the Immigration Judge's order of removal." Certified Admin. Record at 3, *Lona*, 958 F.3d 1225 (No. 17-70329); *see also Lona*, 968 F.3d at 1229.

While Judges Paez and VanDyke cite to *Lona* in their separate opinions to affirm the denial of Goulart's motion for reconsideration, they do so for different reasons. Judge Paez reasons that the motion to reconsider was untimely because "Goulart did not support his motion with a declaration or any other evidence concerning his actions between 2013 and June 2018." Thus, even if Goulart "was unaware of our 2015 decision," in Judge Paez's view the BIA reasonably concluded that Goulart failed to make "reasonable efforts to pursue relief." But the BIA did not base its decision on Goulart's failure to present evidence establishing that he was unaware of our 2015 decision. Certified Admin. Record at 3. Indeed, the BIA did not even address Goulart's knowledge of the 2015 decision. Moreover, although Goulart did not submit an affidavit in support of his reconsideration motion, he represented in the motion itself that "[h]e first learned of the decision on June 9, 2018 when his criminal defense attorney alerted him to the case." The clear implication is that Goulart was not aware of our prior ruling. This stands in contrast to our decision in *Lona*, in which we upheld the BIA's denial of a motion to reconsider because the petitioner "alleged no facts—before the IJ, the BIA, *or on appeal before us*—suggesting a diligent pursuit of her rights." *Lona*, 958 F.3d at 1232 (italics added). Indeed, although Judges Paez and VanDyke both quote this language, they do so by eliminating the

phrase suggesting that if Lona had alleged that she was unaware of our prior ruling, she could have secured relief.

Judge VanDyke goes beyond Judge Paez's analysis by arguing that whether Goulart had actual knowledge of the change in law is irrelevant and that Goulart should have pursued relief even if he did not know that relief was available. I address this argument in some detail later in this opinion. Before doing so, it is important to define "due diligence." My colleagues fail to do so, leaving in place the bizarre holding that a lay person born in a foreign country and who has been removed from the United States based on established (albeit erroneous) precedent must meet the same standard as a member of the immigration bar to "keep abreast of changes in the law and its practice." Model Rules of Pro. Conduct r. 1.1 cmt. 8 (9th ed. 2019).

But "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal citations omitted). Black's Law Dictionary defines "due diligence" as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." In deciding what constitutes reasonable diligence, courts "focus the inquiry on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights." *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017) (internal quotation omitted). Indeed, we have held that the threshold question in determining due diligence is whether "a reasonable person in petitioner's position would" have suspected the "error underlying [his] motion to reopen." *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011).

Due diligence, however, as the Third Circuit recently held, does not require a petitioner to "continuously monitor public sources for years . . . on the unlikely chance that he might learn something which would be useful to his case." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 286 (3d Cir. 2021) (internal quotation and alterations omitted). Indeed, even widespread publication of relevant information is not always sufficient for a court to hold that a petitioner failed to act with due diligence. *See Wilson v. Beard*, 426 F.3d 653, 662 (3d Cir. 2005) (holding that the habeas petitioner "had no expectation that the news media would be a source of information about his case nearly thirteen years after his conviction" despite the fact that news stories relevant to his *Batson* claim were widely published in the press). Rather, "[t]he essential question is not whether the relevant information was known by a large number of people, but whether the petitioner should be expected to take actions which would lead him to the information." *Id.*; *see also Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (collecting cases).

Consistent with the holdings in these cases, the Supreme Court has held that due diligence is demonstrated by "prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging" an adverse decision. *Johnson v. United States*, 544 U.S. 295, 308 (2005). Goulart exhibited such diligence by filing his motion less than two months after he learned about the Supreme Court's *Dimaya* decision from his former criminal defense attorney. Indeed, Goulart had no motive to delay pursuing relief, nor was the agency prejudiced by the delay. In a case that mirrors the circumstances here, the Arizona Supreme Court held that equity did not bar a party's claim based on a change in law, despite her ignorance that the law had changed six years prior, because the party had no reason

to believe the law had changed until she learned about it while consulting with an attorney on a separate matter. *Flynn v. Rogers*, 834 P.2d 148, 153 (Ariz. 1992).

In *Lona v. Barr*, on which my colleagues rely, we held that "claims based on changes in the law are not unheard of, nor are they prohibited." 958 F.3d at 1230–31. We went on to apply the framework set forth in the Fifth Circuit's decision in *Lugo-Resendez v. Lynch*, 831 F.3d 337 (5th Cir. 2016), and the BIA decision on remand that followed the explicit instructions of the Fifth Circuit, *In re: Sergio Lugo-Resendez*, 2017 WL 8787197 (B.I.A. Dec. 28, 2017). *Lugo-Resendez* involved a comparable issue of when equitable tolling was appropriate based on a change in law where, as here, the immigrant's conviction no longer rendered him deportable. *See Lona*, 958 F.3d at 1231. The Fifth Circuit "remanded for further factual development of Lugo-Resendez's claim that he was entitled to equitable tolling" based on a change in law. *Id.*

The BIA was told "not to apply the equitable tolling standard too harshly because denying an alien the opportunity to seek [relief]—when it is evident that the basis for his removal is now invalid—is a particularly serious matter." *Lugo-Resendez*, 831 F.3d at 345 (internal quotations omitted). "As the Supreme Court recently reminded, the core principle of equitable tolling is to escape the 'evils of archaic rigidity' and 'to accord all the relief necessary to correct . . . particular injustices.'" *Id.* (quoting *Holland*, 560 U.S. at 650). Therefore, "the BIA should give due consideration to the reality that many departed aliens are poor, uneducated, unskilled in the English language, and effectively unable to follow developments in the American legal system—much less read and digest complicated legal decisions." *Id.*

The BIA followed that instruction and held that Lugo-Resendez was entitled to equitable tolling even though he had not moved to reopen until more than two years after the Fifth Circuit had ruled that immigrants in his shoes were eligible for relief. *In re: Sergio Lugo-Resendez*, 2017 WL 8787197, at \*1–3. Indeed, the BIA applied equitable tolling even though Lugo-Resendez had taken no steps to pursue relief for more than eight years "because he was told on multiple occasions that there was nothing that could be done about his case and he was unaware that the law affecting his removability could change." *Id.* at \*3. Lugo-Resendez acted only when he "heard about a man" who had been able to seek relief after that man had been deported, and at that time asked his daughter to visit an immigration attorney on his behalf. *Lugo-Resendez*, 831 F.3d at 340. After his daughter did so and "informed him that it was possible to reopen his case," Lugo-Resendez "immediately gathered the money and asked the immigration attorney to file his request to reopen." *Id.* (internal alterations omitted).

The BIA held that Lugo-Resendez had acted diligently because he contacted his daughter as soon as he learned of the change in law and then promptly filed a motion to reopen. *In re: Sergio Lugo-Resendez*, 2017 WL 8787197, at \*3. The BIA also held that Lugo-Resendez faced "extraordinary circumstances beyond his control" that "prevented him from filing his motion until July 2014," namely that Fifth Circuit precedent foreclosed his ability to successfully move to reopen until 2012. *Id.* (internal quotations omitted). Thus, because Lugo-Resendez "filed his motion within a reasonable period of time after he learned of the change in law" permitting him to challenge his deportation, the BIA held that equitable tolling was appropriate. *Id.* The BIA rightly acknowledged that, as the Fifth Circuit had instructed, it would be wrong "to apply the

equitable tolling standard too harshly," because denying an immigrant relief "when it is evident that the basis for his removal is now invalid" is a "particularly serious matter." *Id.* (internal quotation omitted). Thus, as we observed in *Lona*, Lugo-Resendez was entitled to equitable tolling "because he pursued his rights with reasonable diligence and extraordinary circumstances beyond his control prevented him from filing his motion sooner," 958 F.3d at 1231, and he "filed his motion within a reasonable period of time after he learned of the change in law." *Id.* at 1231 n.6 (internal quotation omitted).

The same is true of Goulart: as soon as he learned of the change in law from his former attorney, he retained immigration counsel and filed a motion for reconsideration shortly thereafter, which the BIA held was sufficient to entitle Lugo-Resendez to equitable tolling. *In re: Sergio Lugo-Resendez*, 2017 WL 8787197, at *3. And the extraordinary circumstance here is the same as the BIA recognized in *Lugo-Resendez*, namely the pre-*Dimaya* circuit precedent which rendered any challenge to his deportation futile. Put another way, *Lugo-Resendez* makes clear that a deported immigrant acts with reasonable diligence so long as he acts promptly once he learns of a change in law that removes the barrier to relief. That is true even when the immigrant learns of the change in law years after it occurred—in *Lugo-Resendez*'s case, more than two years later. And we expressly relied in *Lona* on the opinions of both the Fifth Circuit and BIA in *Lugo-Resendez*, while concluding that Lona herself did not satisfy the test set out in those opinions. 958 F.3d at 1230–32 & n.6.

Moreover, Goulart, like Lugo-Resendez, had no notice "that the law affecting his removability could change." *In re: Sergio Lugo-Resendez*, 2017 WL 8787197, at *3.

Indeed, before he was deported, Goulart had argued that burglary was not a crime of violence that rendered him deportable, which the BIA explicitly rejected.  Under these circumstances, there was no basis for Goulart to be aware that the law had changed until his attorney informed him.[1] As the Supreme Court has explained, "[i]mmigration law can be complex, and it is a legal specialty of its own." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).  Indeed, immigration law can be so mystifying that the Supreme Court has required defense counsel to inform their clients that a guilty plea could result in their deportation.[2]  *Id.* at 366–69.

Unlike *Lugo-Resendez*, *Lona* declined to toll the deadline for a motion to reconsider because a Ninth Circuit case, on which the petitioner relied, "plainly followed" a decision issued nearly two years earlier by the Supreme Court. 958 F.3d at 1232.  In this case, by contrast, the motion to reconsider followed almost immediately after the controlling Supreme Court decision in *Dimaya*.  While we reached the same holding in *Dimaya* two years earlier, over a strong dissent by Judge Callahan, that fact should be irrelevant in determining Goulart's due diligence.  Even assuming that an immigrant removed from the United States should be expected to learn of high-profile immigration

---

[1] By contrast, Lona withdrew her appeal to the BIA and was not similarly on notice from the BIA that her claim lacked merit.  *Lona*, 958 F.3d at 1228.

[2] This holding has been expanded upon in the Federal Rules to require judges to inform defendants during the plea colloquy that they may be deported, denied citizenship, or denied future admission into the United States. Fed. R. Crim. P. 11(b)(1)(O).  That is because deportation is, for all practical purposes, part of the "penalty" of a criminal conviction.  *Padilla*, 559 U.S. at 364–66.

cases decided by the Supreme Court—as Goulart did here—it would be unreasonable to expect him to scour the Ninth Circuit docket on the off chance it would issue a decision helpful to his case in the "labyrinthine maze of immigration laws." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1040 (9th Cir. 2016) (McKeown, *J.*, specially concurring). My colleagues cannot plausibly argue that Goulart did not exercise due diligence by failing to closely monitor this Court's docket.

I acknowledge that there may be other areas of law, such as the tolling of the statute of limitations with respect to habeas corpus, that should merit a less generous standard. As the Supreme Court has explained, "AEDPA's acknowledged purpose is to reduce delays in the execution of state and federal criminal sentences." *Ryan v. Gonzales*, 568 U.S. 57, 76 (2013) (internal quotations and alterations omitted). A habeas petitioner who fails to timely move for relief prejudices the prosecution twice over: first, when it is required to exhume stale evidence to defend against habeas relief, and second, if relief is granted, when the prosecution may not be able to reconvene the witnesses or evidence at any retrial.

Unlike the AEDPA context, however, there is no such prejudice in cases like this, where the immigrant was deported for reasons that all agree were invalid. *See Lona*, 958 F.3d at 1231 n.7. Significantly, the policy disfavoring motions to reopen or to reconsider are based on the reality that "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Goulart, however, is not a deportable alien who wishes to remain in the United States. To the contrary, he has already been deported, and the purpose of his motion is to undo his wrongful deportation.

Significantly, Judge Paez and Judge VanDyke offer no explanation of what Goulart reasonably ought to have done to pursue his rights before learning that he had rights to pursue. Judge VanDyke instead offers the fable of John the Burglar, who was ignorant that the legal penalty for burglary had increased before he committed the burglary, to demonstrate that ignorance of the law is no defense to a crime. Judge VanDyke ignores the fact that Goulart's motion for reconsideration is not based on his ignorance of the law at the time he committed his offense. Instead, it is based on the argument that the offense did not render him deportable because his offense did not meet the definition of a crime of violence. And it has long been the case that a defendant's actual innocence is a sufficient basis to excuse procedural defaults. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 623–24 (1998); *Schlup v. Delo*, 513 U.S. 298, 324–27 (1995). More significantly, we have held that a petitioner can file an untimely challenge to his conviction when a change in law has rendered his conduct lawful. *Alaimalo v. United States*, 645 F.3d 1042, 1046–47 (9th Cir. 2011). These cases confirm that this Court should not preclude Goulart from challenging the "particularly severe penalty" of deportation when we now know that he was deported for invalid reasons. *Padilla*, 559 U.S. at 365 (internal quotation omitted). Indeed, as observed earlier, the Supreme Court has held that a defendant must be advised that he could be deported as a result of a guilty plea, in light of the major significance of deportation to an immigrant living in this country. *Id.* at 365–66, 373–74.

Goulart is not a sympathetic character. I can understand the desire to remove convicted burglars from this country. Indeed, Judge VanDyke questions why I have bothered to "champion" the cause of a convicted burglar. The answer should be obvious. The judicial oath, which was adopted in

the Judiciary Act of 1789, requires us to "administer justice without respect to persons, and do equal right to the poor and to the rich." *See* 1 Stat. 73, 76 (codified at 28 U.S.C. § 453). We take such an oath, which derives from biblical teachings, *see Deuteronomy* 1:17, so as not to be blinded by our like or dislike of the parties. We are not called to decide whether Goulart is a good person, but rather whether a person who has been banished from the United States without legal justification should be permitted to seek to return. The Supreme Court has held that the precise statute under which Goulart was deported violates the Constitution. Principles of law and equity require that he be permitted to move for reconsideration in this case. I respectfully dissent.